**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Richard Allen GANT, John Roger Casquilla, and Deborah Corrinne Schneider, Defendants-Appellees.**

**No. 84–2342.**

United States Court of Appeals, Fifth Circuit.

May 6, 1985.

Rehearing and Rehearing En Banc Denied June 18, 1985.

Daniel K. Hedges, U.S. Atty., James R. Gough, Samuel G. Longoria, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellant.

Edward A. Mallett, Houston, Tex., for defendants-appellees.

Gerald Goldstein, San Antonio, Tex., for Gant.

Roland E. Dahlin, II, Thomas S. Berg, Houston, Tex., for Schneider.

Before CLARK, Chief Judge, GOLD-BERG, and TATE, Circuit Judges.

CLARK, Chief Judge:

The United States appeals the suppression of evidence obtained during a warranted search. The district court concluded that probable cause was lacking and that the law enforcement officers who conducted the search did not rely on the warrant in good faith. Finding that the officers did act with objective good faith, we reverse.

I

Richard Allen Gant, John Roger Casquilla, and Deborah Corrinne Schneider are charged with conspiracy to violate the narcotics laws and possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) & 846. Gant and Schneider moved to suppress evidence obtained during a warranted search of Gant's home. Schneider also contended that probable cause to issue a warrant for her arrest was lacking because the affidavit did not link her with any criminal activity. After a hearing, the district court concluded that the magistrate had issued the warrant without probable cause. The court also concluded that the officers who executed the warrant did not rely on it in good faith. The government made a motion for reconsideration, which the court denied. See *U.S. v. Gant,* 587 F.Supp. 128 (S.D.Tex. 1984).

A

The warrant was issued on the basis of the affidavit of J.M. Martinez, a county deputy sheriff. The affidavit detailed observations of Martinez and other law enforcement officers, as well as information obtained by Martinez from an informant. According to the affidavit, the informant told Martinez that both the informant and Gant had purchased drugs from the same source. The informant knew Gant's address and had known Gant for some time. The informant indicated that Gant was a member of a cocaine distribution network in Houston, Texas. The informant also

stated that Gant had bragged about his activities as a dealer and had explained how he would obtain cash for a deal, drive to Florida from Houston, and obtain the cocaine. The cocaine was distributed immediately upon Gant's return to Houston.

The informant's allegations corroborated plea bargain information provided by the local prosecutor. Martinez and United States Drug Enforcement Administration officers began surveillance of Gant. On one occasion, Gant and another member of the cocaine distribution network were seen together at Gant's house. On another occasion, an officer followed Gant to a local bank where the officer watched Gant withdraw an unknown quantity of cash in a lengthy transaction which required two tellers to count the money. Meanwhile, another member of the distribution network named by the informant had been arrested in San Diego for possession of cocaine. At the time of his arrest, the individual was boarding an airplane to Houston. He admitted working for the distribution network and that the cocaine came from Florida.

Deputy Martinez received a telephone call from the informant. The informant notified Martinez that Gant was about to go to Florida to obtain a load of cocaine. Martinez observed Schneider driving east toward Florida on an interstate highway in the Houston area. Two days later, Martinez saw the vehicle heading west into Houston on the same highway. The vehicle stopped at a convenience store where Martinez watched Gant make a brief telephone call. Gant and Schneider then proceeded to Gant's house, which was located five minutes away. Both Gant and Schneider appeared tired, and their automobile showed a noticeable accumulation of road dust and travel wear. Based on these affidavit facts, officers obtained and executed the warrant on Gant's residence that afternoon. They found five pounds of high purity cocaine.

### B

The United States challenges the district court's resolution of the probable cause issue. The government contends that the magistrate's determination of probable cause was reasonable and entitled to deference because the affidavit contained sufficient information for the magistrate to conclude that cocaine was being concealed at Gant's house. Alternatively, the government argues that the evidence should not have been suppressed even if probable cause was lacking. The government maintains that the officers relied in good faith on the sufficiency of the warrant. We agree. Because we find that the officers acted in objective good faith, we need not resolve the probable cause issue.

### II

Following the district court's decision in this case, the United States Supreme Court issued its decision in *United States v. Leon,* —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In *Leon,* a confidential informant had named two suspects who were distributing large quantities of cocaine and methaqualone. Based on the information received from the informant, police officers began an investigation which led to the discovery of two additional suspects. Another informant told police officers that one of the suspects stored drugs in his house. The police officers obtained a warrant to search several residences and automobiles belonging to the suspects and, upon executing the warrant, discovered large quantities of drugs and other evidence.

The defendants moved before trial to suppress the evidence seized by the police in the warranted searches. The district court partially granted the motions after an evidentiary hearing because the affidavit used to apply for the warrant was insufficient to establish probable cause. On review, the Supreme Court refused to reach the probable cause issue. Instead, the Court crafted an exception to the exclusionary rule by admitting evidence obtained by officers acting in objectively reasonable reliance on the warrant issued by a detached and neutral magistrate.

## A

The Supreme Court's adoption of a good-faith exception to the exclusionary rule was foreshadowed four years earlier by our decision in *United States v. Williams*, 622 F.2d 830 (5th Cir.1980) (en banc), *cert. denied*, 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114 (1981). *See also Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 2336, 76 L.Ed.2d 527 (1983) (White, J., concurring); *Stone v. Powell*, 428 U.S. 465, 496, 96 S.Ct. 3037, 3053, 49 L.Ed.2d 1067 (1976) (Burger, C.J., concurring). The district court in the present case applied the *Williams* form of the good-faith exception when it decided that the officers did not rely in good faith on the invalid warrant. The Supreme Court's decision in *Leon* moots any consideration of whether the district court correctly applied our holding in *Williams;* in the context of a search based on a subsequently invalidated warrant, it is the *Leon* standard that we must now apply.

Citing the deterrence of police misconduct as the primary purpose of the exclusionary rule, the Supreme Court in *Leon* concluded "that the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." 104 S.Ct. at 3421. The Court noted that warranted searches would rarely require any extensive deliberation over reasonableness because " 'a warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.' " *Id.* (quoting *United States v. Ross*, 456 U.S. 798, 823 n. 32, 102 S.Ct. 2157, 2172 n. 32, 72 L.Ed.2d 572 (1982)). The Court emphasized, however, that the law enforcement officer's reliance on the magistrate's determination of probable cause had to be objectively reasonable. According to the Court, evidence seized in reliance on a warrant may still be suppressed if one of four criteria is met:

1) the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit (citing *Franks v. Del-*

*aware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978));

2) the magistrate abandoned his judicial role and failed to perform his neutral and detached function (citing *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979));

3) the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" (quoting *Brown v. Illinois*, 422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265–66, 45 L.Ed.2d 416 (1975) (Powell, J., concurring)); or

4) the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized (citing *Massachusetts v. Sheppard*, —— U.S. ——, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984)).

104 S.Ct. at 3421–22.

## B

The government contends that it should not have been required by the district court to bear the burden of demonstrating that the law enforcement officers' reliance satisfied the good-faith exception. We disagree. Although we reserved the question of burden allocation when we decided *Williams*, 622 F.2d at 847, the Supreme Court implicitly resolved the question in *Leon*. The Court noted that "[w]hen officers have acted pursuant to a warrant, the prosecution should ordinarily be able to establish objective good faith without a substantial expenditure of judicial time." 104 S.Ct. at 3422. Once the defendants convinced the district·court that probable cause was lacking, the government was required to prove that the evidence seized during the search was nevertheless admissible because of the officers' objectively reasonable reliance on the warrant. The issue may be of little significance, however, because the determination of good faith will ordinarily depend on an examination of the affidavit by the review-

ing court. It is to such an examination that we now turn.

### III

No attack has been made in this case on the veracity of the allegations in the affidavit, the neutral detachment of the magistrate, or the facial sufficiency of the warrant. In view of the criteria expounded in *Leon*, therefore, the sole question is whether the affidavit of deputy sheriff Martinez was so inadequate as to render official belief in the existence of probable cause entirely unreasonable. We conclude that it was not.

The district court held that probable cause was lacking because the affidavit facts failed to establish a sufficient nexus between Gant's house and the cocaine sought by the law enforcement officers. The court reasoned that the only evidence of a nexus was the officers' inability to discover any place of greater security for the drug transactions, and the observation of Gant and another member of the distribution network together at Gant's house on an earlier occasion. Other factual allegations in the affidavit, however, could be viewed to support the officers' reliance on the magistrate's probable cause determination.

The affidavit indicated that Gant was a member of a cocaine distribution network, and that he ordinarily distributed the cocaine immediately upon returning to Houston from Florida. The affidavit revealed that law enforcement officers were notified that Gant was about to go to Florida to purchase cocaine. They watched Schneider leave Houston, heading east toward Florida. Two days later, they watched Gant and Schneider return. Both Gant and Schneider appeared weary, and their automobile showed signs of extensive travel. The officers observed Gant as he made a brief telephone call from a public telephone located just five minutes from his house. They then followed Gant and Schneider directly to Gant's house.

These facts could, in the eye of a law enforcement officer, readily support a magistrate's inference that Gant had obtained a load of cocaine and that it was still in his possession at the house. The district court indicated that the magistrate could have concluded easily that the cocaine was located in some other place. The proper test, however, is not what the district court judge would have done if the affidavit had been presented to him, or even what most other magistrates might have done. The test is whether it was entirely unreasonable for these officers to accept the magistrate's belief that, based on this affidavit, cocaine was probably located in Gant's house. The officers knew that the magistrate had knowledge that Gant would quickly distribute the cocaine. If Gant did store the cocaine away from his house, his efforts to retain control of the cocaine and to distribute it quickly would have been impaired. Thus, it was not entirely unreasonable for the officers to believe that the magistrate could infer that Gant had retained possession of the cocaine in order to distribute it immediately.

Courts have consistently encouraged law enforcement officers to obtain warrants before conducting searches. *See, e.g., United States v. Chadwick*, 433 U.S. 1, 9, 97 S.Ct. 2476, 2482, 53 L.Ed.2d 538 (1977); *Aguilar v. Texas*, 378 U.S. 108, 110–11, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723 (1964). *Leon* intended that such encouragement should not be undermined by requiring officials to second-guess the magistrate's determination or by encouraging them to forgo a warrant in reliance on exigent circumstances. As the district court noted, the nexus between the place to be searched and the evidence sought may be established through normal inferences about the location of the evidence. *United States v. Freeman*, 685 F.2d 942, 949 (5th Cir.1982). In this case, a magistrate believed that inferences permissible from the affidavit facts established probable cause and justified the issuance of a warrant; a district court judge disagreed. Regardless of whether the magistrate's probable cause determination would withstand deliberate legal review, the affidavit facts presented

to the magistrate were not so insufficient as to preclude the law enforcement officers' objectively reasonable reliance on his probable cause determination.

*Leon* teaches us that the suppression of evidence seized from Gant's house serves no deterrent purpose. Because the officers' reliance on the magistrate's determination of probable cause was not entirely unreasonable, the evidence should not have been suppressed. Accordingly, the judgment of the district court is

REVERSED.