**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Willie B. MAGGITT, a/k/a Willie B.**
**Madgett, Defendant-Appellant.**

**No. 85–4205.**

United States Court of Appeals,
Fifth Circuit.

Dec. 16, 1985.

Robert McDuff, University, Miss. (Court Appointed), for defendant-appellant.

Glen H. Davidson, U.S. Atty., John R. Hailman, Asst. U.S. Atty., Oxford, Miss., for plaintiff-appellee.

Before GOLDBERG, RANDALL and JOHNSON, Circuit Judges.

RANDALL, Circuit Judge.

Willie B. Maggitt appeals from an order of the United States District Court for the Northern District of Mississippi denying his motion to suppress tangible evidence seized on authority of a search warrant. He asserts that the warrant was flawed because the affidavit on which it was based was insufficient. Even if Maggitt is correct that police violated his fourth amendment rights, however, suppression of the evidence would not be appropriate in light of the principles set forth in *United States v. Leon,* —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Therefore, we affirm.

I.

The following facts were developed from testimony and exhibits introduced during an evidentiary hearing. On August 30, 1984, a man with a pistol robbed a bank in Oakland, Mississippi. Witnesses inside and outside the bank provided police with a detailed description of the robber. The man wore tan work clothes and a blue ski mask (which he discarded upon leaving the bank) and carried a blue gym bag with

yellow trim. He fired the weapon once into the ceiling of the bank during the robbery. He escaped with about $12,000 in cash in a blue or black car driven by another individual. Some of the bills were marked.

State and federal law enforcement officials immediately began an investigation of the crime. The next day, on August 31, 1984, Federal Bureau of Investigation agents Kenneth Hughes and Wayne Tichenor, Mississippi Highway Patrol Investigator Jay Clark, and Yalobusha County Sheriff Lloyd Defer jointly sought a search warrant from a Grenada, Mississippi, city judge, Sam Waits. The affidavit in support of the warrant, hand-written on a standard form used to secure state warrants in Mississippi, sought permission to search a house in Grenada occupied by Willie Maggitt and his sister Shirley Maggitt. The full text of the "underlying facts and circumstances" represented by the officers to be true is reproduced in the margin.[1]

In short, paragraph two of the affidavit stated "[i]nvestigation at Grenada, Mississippi determined that" Maggitt fit the physical description of the robber, that he had a record for armed robbery, and that his brother was in a local jail that issued clothes that matched those used by the robber. Further, paragraph three stated "investigation determined that" Maggitt had about $1,000 in $100 bills on the afternoon of August 30, and on that afternoon he bought a diamond ring and took out of a pawn shop several gold chains, including one that he had pawned the previous day. The affidavit stated in its fourth paragraph "investigation determined that" on August 30, Maggitt counted out about $9,000 in cash at his sister's house, and he gave his sister $500. The fifth paragraph stated "investigation determined that" a witness to the robbery, Kenneth Leland, saw on August 31 the automobile used in the geta-

1. ■ On 8/30/84 at approximately 11:00 a.m. the bank of North Mississippi, Okland, Ms, was robbed at gun point by one Negro male. He was wearing tan colored shirt and pants, and a blue knit face mask. He was described as being approximately 6 feet in height & weighed approximately 150 lbs. He had a thick or muscular neck and was nervous while in the bank. He carried a blue with yellow or gold trim gym bag & the money was placed in the bag. He threw the mask on the ground as he left the bank. He was carry a black hand gun and fired one shot into the ceiling of the bank during the robbery. The car he used was described as a 1974 to 1976 Black Pontiac Lemans with a grey or white stripe down the side. One witness saw the letter E in the license plate.

■ Investigation at Grenada Mississippi determined that Willie B. Maggitt fit the description of the bank robber and that he had a thick or big neck. He had been arrested for armed robbery in the past and his brother Tommy Maggitt was in the Grenada County Jail. Uniforms issued at Grenada County Jail are tan in color and match the clothes found near the bank.

■ Investigation determined that Willie B. Maggitt on the afternoon of 8/30/84 had in his possession approximately $1,000.00 in $100.00 bills, that he bought a diamond ring and had taken out of a pawn shop several gold chains, one of which he pawned the previous day on 8/29/84.

■ Investigation further determined that on the afternoon of 8/30/84, Willie B. Maggitt had in his possession a medium sized brown paper sack, and that he counted out approximately $9,000.00 in money at his sister's, Shirley Maggit house. Shirley Maggitt received about $500.00 of this money in $5.00 bills. This money was on the afternoon of 8/30/84 in the house of Shirley Maggitt who lives on Pine Hill in Grenada, Miss.

■ Investigation determined that Ellen Jean Clark, 71 Gayosa St. Grenada Ms., has a 1974 Black Pontiac Lemans, license plate EGN–919, Grenada Ms., with white stripe. That on 8/31/84 Kenneth Leland, a witness who saw the black pontiac automobile at the Oakland Bank, just prior to the robbery, saw the same vehicle at the warehouse grocery in Grenada Ms and copyied down the license plate EGN–919. He called and reported this information to the Yalobusha County Sheriff's Dept. to Homer Melton, the Chief Deputy Sheriff.

■ A photo spread was shown to witnesses who saw the black male prior to the robbery, and one witness after viewing this photo spread picked out the photo of Willie B. Maggitt as looking just like the man he saw just before the bank robbery at Oakland.

■ On 8/30/84 Tommy Maggitt, was being held at the Grenada County Jail in lieu of $10,000.00 bond. That Ida Maggitt, Tommy's wife had been to Allied Surety Bonding Co. several times in the past but did not have the money to bond him out. On 8/30/84 Ida Maggitt had $1,000.00 in cash and used this money, which was in $100.00 and $50.00 bills to post Tommy Maggitt's bond.

way and reported its license plate number to police. The sixth paragraph states that "witnesses" saw the robber "prior to the robbery," and "one witness" picked Maggitt's picture out of an array. Finally, the seventh paragraph states that on August 30, Maggitt's brother, Tommy, was bailed out of county jail by Tommy's wife after earlier unsuccessful attempts. She paid $1,000 in cash, in $100 and $50 bills. Apart from the witness named Leland, no other witnesses are identified. The affidvait does not disclose sources for much of the information.

The meeting between the officers and Judge Waits at about 5:30 p.m. on August 31 was not recorded. Judge Waits testified at the suppression hearing as to·what transpired at the meeting. According to his testimony, Judge Waits read the affidavit, and "noticed where they kept saying 'investigation revealed, investigation determined.'" He asked the officers several questions about the sources of the information in order to "get them down into specifics." The officers identified bank employees as sources for some of the information, and they told Judge Waits that they had talked directly to the individual who saw cash being counted out at Maggitt's sister's house. In short, Judge Waits "made them go into much more detail on what they did, parties they talked to. They didn't name names, but just the people they got the information from, like employees at the bank or people on the scene." After the police "[went] into much more detail on what they did," Judge Waits concluded that there was probable cause to search Maggitt's house, and he signed a search warrant.

State and federal law enforcement officials executed the warrant later in the day on August 31. The return states that, among other things, they seized $8,355 in cash. Maggitt subsequently was arrested, and a federal indictment was handed down charging him with conspiracy to commit

armed bank robbery, 18 U.S.C. §§ 371, 2113; unlawful possession of a handgun by a convicted felon, 18 U.S.C. § 922(h); and armed bank robbery, 18 U.S.C. § 2113.

Maggitt's able counsel filed a motion to suppress the fruits of the search, contending that the affidavit was flawed in that it did not name the sources of its information. The government responded that the affidavit provided ample probable cause, but that even if it did not, under the Supreme Court's decision in *Leon*, suppression was not mandated. The district judge determined in a written order after an evidentiary hearing that the affidavit "fails constitutional muster" under the test set forth in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The district judge ruled that "the conclusory phrase 'investigation revealed' which was not supplemented by sworn oral testimony before the magistrate revealing the 'basis of knowledge' and its 'reliability' was simply inadequate," and probable cause to issue the warrant therefore was absent. Nevertheless, the district judge declined to suppress the evidence, because "the officers who executed the·warrant in question had an objectively reasonable good-faith reliance on the warrant."

Maggitt subsequently entered a conditional guilty plea to counts one and three of the indictment, preserving his right to appeal the adverse ruling on his motion to suppress. Fed.R.Crim.P. 11(a)(2). The district court sentenced him to three years incarceration on count one and fifteen years incarceration on count three, the sentences to run concurrently.

## II.

■ The first issue briefed by the parties is whether the city judge properly issued the search warrant under the standard of *Illinois v. Gates*. Maggitt argues that the affidavit failed on its face to establish probable cause,[2] because the affidavit

---

**2.** The government suggests in passing that the warrant was a state search warrant; therefore the Rule 41(c)(1), Fed.R.Crim.P., recording requirement is inapplicable and, as a matter of Mississippi state law, the officers' unrecorded oral statements at the warrant proceeding may

did not disclose the sources of some of the information set forth in it. *See generally Giordenello v. United States,* 357 U.S. 480, 486, 78 S.Ct. 1245, 1250, 2 L.Ed.2d 1503 (1958); *United States v. Holmes,* 521 F.2d 859, 871–72 (5th Cir.1975), *aff'd en banc in pertinent part,* 537 F.2d 227, 228 & n. 2 (5th Cir.1976).

■ A determination that probable cause is lacking is not always necessary before reaching the issue of the objective good-faith exception of *Leon.* *United States v. Gant,* 759 F.2d 484, 486 (5th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 149, 88 L.Ed.2d 123 (1985). However, bypassing a review of the probable cause determination may not be appropriate in certain cases, because reviewing courts should provide guidance on the limits of the fourth amendment. Justice White, who later authored the *Leon* majority opinion, advanced in a concurring opinion in *Illinois v. Gates* considerations that reviewing courts should take into account in deciding the objective good faith issue without addressing the question of whether a fourth amendment violation has occurred:

> When a Fourth Amendment case presents a novel question of law whose resolution is necessary to guide future action by law enforcement officers and magistrates, there is sufficient reason for the Court to decide the violation issue *before* turning to the good-faith question. Indeed, it may be difficult to determine whether the officers acted reasonably until the Fourth Amendment issue is resolved. In other circumstances, however, a suppression motion poses no Fourth Amendment question of broad import—the issue is simply whether the facts in a given case amounted to probable cause—in these cases, it would be prudent for a reviewing court to immediately turn to the question of whether the officers acted in good faith. Upon finding that they had, there would generally be no need to consider the probable cause question.

462 U.S. at 264–65, 103 S.Ct. at 2346 (White, J., concurring in the judgment).

This case raises only relatively well-settled fourth amendment principles. It does not raise a question of "broad import." Rather, the fourth amendment issue is whether the attributed facts set forth in the affidavit rise to the level of probable cause. Under these circumstances, it is appropriate to turn to the issue of the law enforcement officials' objective good-faith reliance on the warrant without deciding whether the warrant was issued on a showing of probable cause.

### III.

■ Even if Maggitt's fourth amendment right to have his house searched only upon a valid determination of probable cause was violated, whether to exclude the

---

be taken into account in a probable cause determination. Brief of Appellee at 21. However, under *Byars v. United States,* 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520 (1927), *Lustig v. United States,* 338 U.S. 74, 79, 69 S.Ct. 1372, 1374, 93 L.Ed. 1819 (1949), and *United States v. Hanson,* 469 F.2d 1375, 1377 (5th Cir.1972), none of which is cited by the government, this search was plainly "federal in character"; therefore the Federal Rules of Criminal Procedure were applicable. "[I]f a federal agent is invited to participate in a joint search with state officers, the legality of the search and the admissibility of the evidence seized in the search must be tested, in a federal prosecution, as if the search were exclusively federal." *Id. See also United States v. McCain,* 677 F.2d 657, 662 (8th Cir.1982). Rule 41(c)(1) apparently prohibits use of the oral testimony before the city judge in a determination of whether probable cause to issue the

search warrant existed, because the hearing was not recorded and notes of the hearing were not made. *See United States v. Hill,* 500 F.2d 315, 322 n. 3 (5th Cir.1974) (Rule 41(c)(1) as amended in 1972 requires that interrogation and affiant's responses be recorded and made a part of the affidavit if magistrate relies on answers to establish probable cause), *cert. denied,* 420 U.S. 931, 95 S.Ct. 1135, 43 L.Ed.2d 404 (1975). Because we need not decide whether the search warrant was issued on a showing of probable cause, however, we do not examine the substance of the officers' answers at the warrant proceeding. In Part III, *infra,* we discuss whether the fact that the judicial authority held a proceeding or hearing in which the magistrate repeatedly questioned the agents may contribute to a finding that the officers acted in objective good faith.

evidence from Maggitt's trial is an entirely separate issue. In *United States v. Leon,* the Supreme Court created what has come to be known as the "good-faith exception" to the exclusionary rule. Under that exception, evidence will be admitted in the prosecution's case-in-chief if it is obtained by law enforcement officials acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate, even if the affidavit on which the warrant was based was insufficient to establish probable cause. 104 S.Ct. at 3409, 3421-23. *See also Massachusetts v. Sheppard,* — U.S. —, 104 S.Ct. 3424, 3428, 82 L.Ed.2d 737 (1984) (exclusionary rule does not apply to evidence seized during search that officers reasonably believed was authorized by warrant later determined to be technically defective). The Court in *Leon* concluded that "[i]n the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." 104 S.Ct. at 3423. The burden is on the prosecution to "establish" objective good faith. *Id.* at 3422.

■ Exclusion remains an appropriate remedy, however, when at least one of four situations is present:

1) the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit (citing *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978));

2) the magistrate abandoned his judicial role and failed to perform his neutral and detached function (citing *Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979));

3) the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" (quoting *Brown v. Illinois,* 422 U.S. 590, 610-11, 95 S.Ct. 2254, 2265, 45 L.Ed.2d 416 (1975) (Powell, J., concurring)); or

4) the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized (citing *Massachusetts v. Sheppard,* — U.S. —, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984)).

*United States v. Gant,* 759 F.2d at 487 (citing *Leon,* 104 S.Ct. at 3421-22). In the case *sub judice,* Maggitt asserts that the third situation is present: the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon,* 104 S.Ct. at 3422.

### A.

As a threshold matter, we must determine the standard of review of the district court's conclusion that the officers acted in objective good faith. Although we did not expressly address the issue in *Gant,* 759 F.2d at 484, we did not accord the district court's finding of a lack of good faith any special deference, and reversed based on *Leon.* In *United States v. Hendricks,* 743 F.2d 653 (9th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 1362, 84 L.Ed.2d 382 (1985), the court stated that a district court's determination of objective good faith under *Leon* is "subject to *de novo* review as a mixed question of fact and law." *Id.* at 656. *See also United States v. Accardo,* 749 F.2d 1477, 1481 (11th Cir.) ("ultimate question of good faith *vel non* is a legal issue"), *cert. denied sub nom. Pinckard v. United States,* — U.S. —, 106 S.Ct. 314, 88 L.Ed.2d 295 (1985); *United States v. Sager,* 743 F.2d 1261, 1265 (8th Cir.1984) (application of *Leon* standard "is really more akin to the application of a new legal criterion to the same facts, than it is to the decision of a new question of fact," therefore issue can be addressed for first time on appeal), *cert. denied,* — U.S. —, 105 S.Ct. 1196, 84 L.Ed.2d 341 (1985). *Cf. United States v. Fama,* 758 F.2d 834, 837 (2d Cir.1985) (reviewing district court's objective good faith finding, apparently as a question of law). In the analogous area of "good faith" qualified immunity from civil

rights actions brought under 42 U.S.C. § 1983, the Supreme Court has stated that "whether the conduct of which the plaintiff complains violated clearly established law" is an "essentially legal question" that could be resolved before trial or discovery in some cases. *Mitchell v. Forsyth,* —— U.S. ——, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985).

Accordingly, it seems clear that the issue of objective reasonableness of officers' reliance on a search warrant is a question of law reviewable *de novo* in this Court. However, the parties agree that the underlying facts upon which that determination is based are binding on appeal unless clearly erroneous.

### B.

The *Leon* good faith inquiry "is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon,* 104 S.Ct. at 3421 n. 23. *See also Fama,* 758 F.2d at 837 (issue is "whether under the circumstances a reasonably well-trained officer would have held an objectively reasonable belief that there was probable cause to search"); *cf. Massachusetts v. Sheppard,* 104 S.Ct. at 3429 n. 7 (if " 'it is plainly evident that a magistrate or judge had no business issuing a warrant,' " then police cannot objectively rely on the warrant) (quoting *Illinois v. Gates,* 462 U.S. at 264, 103 S.Ct. at 2345 (White, J., concurring in the judgment)). Because the exclusionary rule is designed to deter police misconduct, exclusion is inappropriate in cases in which police have acted "honorably," *United States v. Segovia-Melgar,* 595 F.Supp. 753, 757 (D.D.C. 1984), and in an objectively reasonable manner, *Gant,* 759 F.2d at 488.[3]

In *Leon,* only one of the several defendants, Alberto Leon, alleged that no reason-

ably well-trained police officer could have believed that there was probable cause to issue the search warrant for his house. The affidavit in support of the search contained only a few references to Leon's activity in the suspected drug conspiracy: (1) Leon had been arrested one year earlier on narcotics charges; (2) Leon employed a suspected drug dealer in his place of business; and (3) an unidentified informant told police that Leon stored drugs in his house over one year earlier. Nevertheless, the Supreme Court concluded that the affidavit satisfied the "objective good faith" standard. The Court stated that the

> application for a warrant clearly was supported by much more than a "bare bones" affidavit. The affidavit related the results of an extensive investigation and, as the opinions of the divided panel of the Court of Appeals make clear, provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause. Under these circumstances, the officers' reliance on the magistrate's determination of probable cause was objectively reasonable, and application of the extreme sanction of exclusion is inappropriate.

*Id.,* 104 S.Ct. at 3423. In *United States v. Settegast,* 755 F.2d 1117 (5th Cir.1985), this Court noted that when a "warrant application was supported by more than a 'bare bones' affidavit containing wholly conclusory statements," an objective good-faith belief in the warrant's validity was appropriate. *Id.* at 1122 n. 6. It is the duty of the magistrate to interpret the law, *United States v. Thomas,* 757 F.2d 1359, 1368 (2d Cir.1985), so that if a warrant is invalid, the error is attributable to the issuing authority, not to law enforcement officials, unless reliance on the warrant was unreasonable. *Fama,* 758 F.2d at 838. *See also United States v. Thornton,* 746 F.2d 39, 49 (D.C. Cir.1984) (not objectively unreasonable to

---

**3.** Because the *Leon* standard is objective, the testimony of the agent who prepared the affidavit that he "was aware" that he should have set forth in the affidavit the source of the unattributed information is not particularly relevant.

This is especially so in light of the questioning of the agent as to the affidavit's possible flaws at the proceeding before the city judge, which the agent could have concluded corrected the flaws.

believe that defendant's repeated entry into suspected gambling establishment and telephone calls to those establishments constituted probable cause); *cf. United States v. Cardall,* 773 F.2d 1128, 1133 (10th Cir. 1985) (stating in dictum that suppression is appropriate only if underlying affidavit is "devoid of factual support"); *United States v. Savoca,* 761 F.2d 292, 297 (6th Cir.1985) (for suppression to be appropriate under *Leon,* affidavit must be "so facially deficient" that reasonable officer could not believe that it authorized search), *cert. denied,* —— U.S. ——, 106 S.Ct. 153, 88 L.Ed.2d 126 (1985).

■ The affidavit in this case, like that in *Leon,* is far more than a "bare bones" affidavit. It disclosed in detail the results of a careful and thorough investigation, including a statement that an eyewitness to the robbery picked Maggitt's photo out of an array. However, like the affidavit at issue in *Leon,* it arguably failed to set forth an adequate basis upon which to determine the reliability and credibility of informants' information in certain paragraphs. That defect is cut "out of the same juridicial cloth as that in *Leon.*" *United States v. Merida,* 765 F.2d 1205, 1214 (5th Cir.1985). Whatever the flaws in the affidavit before us, it cannot be said that it is a "bare bones" list of "wholly conclusory statements," or that it was "devoid of factual support." The eyewitness' selection of Maggitt's photograph from an array, and the carefully detailed results of the investigation with repeated references to facts, rather than "mere conclusions," removes this affidavit from the "bare bones" category. *Cf. Mundy v. Georgia,* 586 F.2d 507, 508 (5th Cir.1978).

■ Further, the investigating officers appeared before a judicial authority who carefully examined them about the portions of the affidavit that he apparently considered to be lacking. The city judge was satisfied with the officers' responses to his questions. It was objectively reasonable for the officers to believe that whatever flaws may have existed in the warrant were cured by the city judge's questions and their answers at the warrant application proceeding, *cf. Merida,* 765 F.2d at 1214 (objective good faith of officers bolstered by their personal knowledge that search warrant emanated in part from grand jury indictment, although fact of indictment apparently was not set forth in search warrant affidavit), although the proceeding was not recorded, in violation of Fed.R.Crim.P. 41(c)(1). A reasonable police officer would be justified in assuming that the city judge was following the applicable non-constitutionally based portions of the Federal Rules of Criminal Procedure. Although "*Leon* imposes an obligation on the agents, as well as the magistrate, to ensure that a warrant is correctly obtained," *United States v. Freitas,* 610 F.Supp. 1560, 1572 (N.D.Cal.1985), there appears to be no good reason to punish officers by excluding the evidence for the city judge's failure to ensure that the recording requirement of Rule 41(c)(1) was met. That aspect of Rule 41(c)(1) is not designed to deter police misconduct.[4] Exclusion of the evidence is not called for on the facts of this case.

### IV.

For the foregoing reasons, "the officers' reliance on the magistrate's determination of probable cause was objectively reasonable, and application of the extreme sanction of exclusion is inappropriate." *Leon,* 104 S.Ct. at 3423. "Courts have consistently encouraged law enforcement officers to obtain warrants before conducting searches [citations omitted]. *Leon* intended that such encouragement should not be undermined by requiring officials to sec-

---

**4.** The rule is designed "to insure an adequate basis for determining the sufficiency of the evidentiary grounds for the issuance of the search warrant if that question should arise." Notes of Advisory Committee on 1972 Amendment to Rule 41. That goal is not affected by our decision, because our inquiry here is not whether the city judge made a proper determination of probable cause, but whether the agents reasonably relied on the city judge's determination in light of the information set forth in the affidavit and the process by which the warrant was issued.

ond-guess the magistrate's determination or by encouraging them to forego a warrant in reliance on exigent circumstances." *Gant,* 759 F.2d at 488. The order of the district court denying defendant's motion to suppress and the judgments of conviction are affirmed.

AFFIRMED.