United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 30, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 05-10591

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SAINT FLOREL NEAL,

also known as Black,                    Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas
(04-CR-46)

Before GARWOOD, HIGGINBOTHAM, and CLEMENT, Circuit Judges.

GARWOOD, Circuit Judge:[*]

Defendant-appellant Saint Florel Neal (Neal) was tried by a jury and convicted of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2) (count one) and of possession of marihuana with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(D) (count two). He was

---

[*]Pursuant to 5TH CIR. R. 47.5 the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

sentenced to 120 months' imprisonment on count one and 60 months' imprisonment consecutively thereto on count two. Neal challenges both an unfavorable evidentiary suppression ruling and his sentence, principally contending, in his challenge to the suppression ruling, that the search and arrest warrant affidavit contained material misrepresentations, and, in respect to his sentence (imposed post-*Booker*), that the district court erred in holding that his prior conviction for child endangerment was a crime of violence under the "otherwise" clause of U.S.S.G. § 4B1.2(a)(2) (2003). We affirm, holding that the good faith exception applies and rejecting the sentencing challenge.

**FACTS AND PROCEEDINGS BELOW**

During January of 2004, ATF agents were investigating complaints of narcotics trafficking at the Sundance Apartments in northeast Dallas. They executed two search warrants at the complex, the result of which led them to suspect another four apartment units. All four of these suspected units — 1166, 1167, 2166, and 2167 — were owned by the defendant, Saint Florel Neal. Because investigators didn't have search warrants for these four apartments, they decided to attempt a "knock and talk."

An agent knocked on the door of apartment 1166, and, getting no answer, then knocked on the door of apartment 1167. Orvel Hunt, Jr. answered the door holding a gun. The ATF agents dove for cover and Hunt ran back inside. The agents decided to literally smoke

2

him out, breaking a window and throwing pepper spray grenades into the apartment. A short time later, Hunt emerged from his apartment and turned himself in.

The defendant, Neal, was in 2167, the apartment above Hunt. During the scuffle, Neal opened his door and peeked down. When he saw the ATF agents, he ran back inside. After Hunt was arrested, he told the agents that he sold marihuana for Neal out of his apartment and that Neal had given him a Colt .45 for protection during the drug deals.

The interviewing officers relayed this information to Officer Woods, who was in the parking lot of the Sundance Apartments and was tasked with getting a search and arrest warrant for Neal's apartment. Officer Woods relayed the information to Agent Don Kaase, whom he asked to draft the search warrant affidavit. When the affidavit was ready, Officer Woods signed it and presented it to the magistrate judge. In the affidavit, Officer Woods swore that "I, the affiant, received information during the execution of a search warrant on January 9, 2004, from Orvel L. HUNT Jr. . . . ." As Officer Woods later admitted during the suppression hearing, this statement wasn't entirely true. Officer Woods had never talked to Orvel Hunt.

On the information provided in the affidavit, the magistrate judge issued a search (and arrest) warrant for Neal's apartment. When the officers executed the warrant, Neal opened the door and

3

was arrested.  Neal asked to see the warrant, but the agents didn't produce it until later; nor did they leave a copy of the warrant in the apartment.  While in custody, Neal waived his Miranda rights and cooperated with the police, telling them where in the apartment they could find his Glock pistol (wrapped in a newspaper), the ammunition for the pistol (in a VCR box), and two pounds of marihuana (in a vacuum-cleaner bag).  During questioning, Neal admitted that the pistol was his, claiming that he had bought it for protection.

The defendant moved to suppress the evidence, arguing both that the search and arrest warrant affidavit contained a misrepresentation and that the search warrant was improperly executed.  The district court ruled:

> "The Court determines based on the evidence that I have heard that the warrant itself is sufficient.  It is certainly not perfect.  I think at the minimum better draftsmanship would have made clear that Mr. Woods talked to others, rather than directly to Mr. Hunt, but in light of the circumstances where a number of people were being interviewed during the execution of a number of warrants, the Court concludes that the deficiency is not material . . . .  So the challenge to the good faith of the officers who executed the warrants is denied."

> "Now, with respect to the execution of the warrant, there is an issue raised as to whether the warrant was delivered either to Mr. Neal or to Ms. Taylor, who had at least an ownership, if not exclusive ownership, in 2167. It seems clear that no one gave a full version of the warrant and the affidavit that was incorporated into it to either Mr. Neal or Ms. Taylor.  The question is does that error, and error it was, under the rules support the

4

suppression of the warrant itself, and the Court concludes based on Fifth Circuit law that it does not support the suppression of the warrant, that there is no indication in any of the evidence presented to the Court that the warrant would not have been executed, or could not have been executed upon merely because a copy was not delivered to Mr. Neal or Ms. Taylor. So that challenge is denied."

The case proceeded to a trial by jury, after which Neal was found guilty on both counts.

The Presentence Report (PSR), applying U.S.S.G. § 2K2.1(a)(2) (2003), assessed a base offense level of twenty four, based on two prior felony guilty plea convictions that it classified as crimes of violence. The defendant objected to the PSR's classification of one of these two offense, his prior Texas conviction for endangerment of a child, as a crime of violence. The district court overruled the objection. Neal also challenges that ruling in this appeal.

**DISCUSSION**

I.  The Suppression Hearing

Neal appeals from the district court's order denying his motion to suppress the evidence seized from his apartment on authority of a search warrant. First, he asserts that the warrant was insufficient to establish probable cause because the affidavit on which it was based contained incorrect information. Next, he argues that even if the warrant were sufficient, he is still entitled to suppression because the warrant was executed in

5

violation of Federal Rule of Criminal Procedure 41(f).

A.  Sufficiency of the Warrant

Before we determine whether the ATF agents violated Neal's Fourth Amendment rights, we first determine whether Officer Woods's good-faith reliance on the warrant would, the asserted Fourth Amendment violation notwithstanding, make suppression of the evidence an inappropriate remedy.  *See United States v. Leon*, 104 S.Ct. 3405(1984); *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1992).  Indeed, "[p]rinciples of judicial restraint and precedent dictate that, in most cases, we should not reach the probable cause issue if . . . the good-faith exception of *Leon* will resolve the matter."  *United States v. Craig*, 861 F.2d 818, 820 (5th Cir.1988).[1]

The good-faith exception to the Fourth Amendment's exclusionary rule provides that "where probable cause for a search warrant is founded on incorrect information, but the officer's reliance upon the information's truth was objectively reasonable,

---

[1]This court makes an exception when the case involves a "novel question of law whose resolution is necessary to guide future action by law enforcement officers and magistrates." *Illinois v. Gates*, 103 S.Ct. 2317, 2346 (1983) (White, J., concurring); *United States v. Maggitt*, 778 F.2d 1029, 1033 (5th Cir.1985), cert. denied, 106 S.Ct. 2920 (1986).  This case does not present a novel question of Fourth Amendment law.  The Court has also suggested that "[e]ven if the Fourth Amendment question is not one of broad import, reviewing courts could decide in particular cases that magistrates under their supervision need to be informed of their errors and so evaluate the officers' good faith only after finding a violation." *United States v. Leon*, 104 S.Ct. 3405, 3422 (1984). That is inapplicable here.

6

the evidence obtained from the search will not be excluded." *United States v. Cavazos*, 288 F.3d 706, 709 (5th Cir. 2002). However, the Supreme Court has recognized four situations where the good-faith exception is unavailable. *Leon*, 104 S.Ct. at 3421; *see also United States v. Maggitt*, 778 F.2d 1029, 1034 (5th Cir. 1985). Relevant here is the situation where the "judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Leon*, 104 S.Ct. at 3421. *See also United States v. Webster*, 960 F.2d 1301, 1307 n.4 (5th Cir. 1992). In such a situation, the Court reasoned, it would be objectively unreasonable for the officers to have relied on the tainted warrant. *Leon,* 104 S.Ct. at 3421*.*

The party attacking the warrant bears the burden of establishing by a preponderance of the evidence that the affiant's misrepresentation was made intentionally or with reckless disregard for the truth. *United States v. Alvarez*, 127 F.3d 372, 373-74 (5th Cir. 1997). In general, the question of whether an officer's reliance on a search warrant was objectively reasonable is a question of law that we review *de novo*. *United States v. Maggitt*, 778 F.2d 1029, 1035 (5th Cir. 1985). However, the district court's determination of the affiant's state of mind—whether the affiant was lying intentionally, lying recklessly, or merely negligently misstating—is a factual finding that we have reviewed for clear

error.  *See Alvarez*, 127 F.3d at 375 ("[W]e are convinced that the district court clearly erred in holding that the false statement was 'at best negligent.'").[2]

Neal argues that Officer Woods's sworn misrepresentation, that he "received information . . . from Orvel Hunt," was made intentionally or recklessly.[3]  The government responds that Officer Woods's misrepresentation was an accidental omission, or, at worse, a negligent misrepresentation.

In *Alvarez*, this court reviewed a ruling on a motion to suppress evidence that was obtained pursuant to a warrant that had been issued based on a misrepresentation in a police officer's

---

[2]Determinations of fact made by a district court in ruling on a motion to suppress are "accepted unless the district court's findings were clearly erroneous, or influenced by an incorrect view of the law."  *United States v. Gonzales*, 79 F.3d 413, 419 (5th Cir.), *cert. denied*, 117 S.Ct. 183 (1996).

[3]Neal also complains that the affidavit fails to state several items, namely that Hunt was a drug dealer and co-conspirator of Neal, that Hunt gave a written statement which did not contain some of the statements attributed to him in the affidavit, and the circumstances under which the statements were made by Hunt.  We note that the affidavit indicates the information recited was obtained in connection with the execution of a search warrant at the Sundance Apartments where Hunt lived, and also that Hunt was a drug dealer and co-conspirator of Neal (e.g., "Hunt . . . stated that . . . Neal gave him marijuana to sell and one firearm described as a Colt, Model Commander, .45 caliber . . . for protection during narcotics transactions.").  Nothing in the affidavit is inconsistent with Hunt's written statement and the affidavit neither states nor implies that it is a complete recitation of everything Hunt stated to the officers; nor does anything in Hunt's written statement imply that nothing else was orally stated to the officers or tend to undermine the existence of probable cause to search the premises.  These contentions of Neal are wholly without merit.

8

search-warrant affidavit. *Alvarez*, 127 F.3d at 373–75. There, the district court had denied the defendant's motion to suppress, ruling that the misrepresentation was not intentional or reckless, but was "at best negligent." *Id.* at 375 (internal quotations omitted). This court reversed, holding that, based on circumstantial evidence, the officer had clearly displayed at least a reckless disregard for the truth. *Id.* The *Alvarez* court listed the circumstantial factors that it found relevant to overturning the district court's ruling: exigency, the materiality of the misrepresentation, the officer's level of training, non-disclosure of facts underlying conclusory statements, and whether the officer consulted with an attorney. *Id.*

Here the district court considered all relevant circumstantial factors and reasonably concluded that Officer Woods's misrepresentation was neither intentional nor reckless, but merely a problem of "draftsmanship." The district court noted that the Officer Woods's misrepresentation was immaterial to the magistrate judge's finding of probable cause and concluded that "in light of the circumstances where a number of people were being interviewed during the execution of a number of warrants . . . . [t]he challenge to the good faith of the officers who executed the warrants is denied."

We agree with the district court, first, because Officer Woods was pressed for time, as he was handling multiple interrogations

and multiple warrant applications, in contrast to the officer in *Alvarez*, who had conceded that he "was not rushed." *Alvarez*, 127 F.3d at 375. Second, we agree that the relevant misrepresentation was immaterial to the magistrate judge's finding of probable cause, a fact which, in addition to being directly relevant to the Fourth Amendment's probable cause determination (which we here pretermit), also provides circumstantial evidence of Officer Woods's good faith. Accordingly, the district court did not clearly err in determining that Officer Woods's misrepresentation was neither intentional nor reckless, and, as a result, did correctly invoke the good-faith exception to the Fourth Amendment's exclusionary rule.

B. Improper Execution of the Warrant

Neal next contends that even if the warrant were sufficient, he is still entitled to suppression because the warrant was executed in violation of Federal Rule of Criminal Procedure 41(f), which provides that "[t]he officer executing the warrant must . . . give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken . . . ." FED. R. CRIM. P. 41(f). However, "[v]iolations of Rule 41(d) [now 41(f)][4] are essentially ministerial in nature and

---

[4]On December 1, 2002, the relevant section governing the execution of warrants was moved from 41(d) to 41(f). Except for a revision not relevant here, however, the amendment was only stylistic. *See* FED. R. CRIM. P. 41 advisory committee's note.

a motion to suppress should be granted only when the defendant demonstrates legal prejudice or that non-compliance with the rule was intentional or in bad faith." *United States v. Marx*, 635 F.2d 436, 441 (5th Cir. 1981) ("Failure to deliver a copy of the search warrant to the party whose premises were searched until the day after the search does not invalidate a search in the absence of a showing of prejudice."); *see also United States v. Gantt*, 194 F.3d 987, 1005 (9th Cir. 1999)("Violations of [Rule 41(f)] do not usually demand suppression, however."). The defendant has the burden of proof in challenging the validity of the search warrant's execution. *See Marx*, 635 F.2d at 441.

Neal has failed to discharge this burden because he has failed to even assert legal prejudice or intentional non-compliance, let alone demonstrate either of these requirements. Indeed, even if we assume from Neal's heavy reliance on *Gantt* (a Ninth Circuit case where the officer's good faith was challenged) that Neal is also asserting intentional non-compliance, albeit implicitly, his appeal would still be unavailing. For in *Gantt*, although the Ninth Circuit did affirm a suppression order based on the officer's failure to present a warrant after the defendant requested a copy, that court reached its conclusion that "the violation was deliberate," by noting that the government "provided no explanation or justification for the agents' failure." *Gantt*, 194 F.3d at 1005. In this circuit, however, as discussed above, it is the

defendant, not the government, who bears the burden of demonstrating intentional non-compliance by the searching officers. Because Neal has failed to discharge this burden, and because, as discussed above, the good faith exception applies, we affirm the district court's denial of Neal's motion to suppress.[5]

## II. Sentence Enhancement

Neal's base offense level was set at twenty four, based on two prior felony convictions that were classified as crimes of violence. *See* U.S.S.G. § 2K2.1(a)(2) (2003). He challenges this determination, contending that one of his prior convictions, a Texas conviction for endangerment of a child, is not a crime of violence under the relevant guideline. Although this court has previously held that Texas's endangerment-of-a-child statute is *not*

---

[5]Neal raises two other issues related to his conviction. First, he asks this court to reverse his felon in possession conviction because if his custodial statements are suppressed as fruits of an invalid search and arrest warrant, then there is insufficient evidence to support his conviction. Because we affirm the district court's denial of his motion to suppress, we also affirm the district court's denial of the defendant's motion for acquittal based on insufficient evidence. Second, Neal asserts in wholly conclusory fashion (and without any reference to any specifics) that the prosecutor violated his right to exculpatory evidence under *Brady* and *Giglio*. A docket entry reflects that in response to a defense discovery motion the government produced evidence which was inspected *in camera* on June 15th by the district court and that a government report concerning the evidence was also reviewed *in camera* (but apparently not filed in the record) on July 21st. Neither the evidence nor the report is in the record, and Neal never requested that either the evidence or the report be included in the record or made available to us. Because there is nothing before us to support Neal's *Brady* and *Giglio* complaints, we decline to set aside his conviction or sentence on that basis.

a crime of violence under the "has as an element" clause of U.S.S.G. § 2L1.1,[6] here the district court found that the conduct charged in the indictment to which Neal pled guilty constituted a crime of violence under the residual "otherwise" clause of section 4B1.2(a)(2), to which section 2K2.1 refers.[7]  For the reasons discussed below, we agree with the district court's ruling and hold that, under section 4B1.2's otherwise clause, Neal's prior conviction for child endangerment was a violent felony.

We review the district court's application of the Sentencing

---

[6]*See United States v. Calderon-Pena*, 383 F.3d 254 (5th Cir. 2004) (*en banc*).  *Calderon-Pena* involved the application of § 2L1.1, which does not have the residual "otherwise" clause included in § 4B1.2(a)(2).

[7]The guideline applicable to the felon in possession offense is § 2K2.1 which provides in relevant part:
"(a) Base Offense Level (Apply the Greatest):
        (2) **24**, if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense;".

Application note 5 to § 2K2.1 states that "[F]or purposes of this guideline: . . . 'Crime of violence' has the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2."
Section 4B1.2 defines the term "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that – (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*."  U.S.S.G. § 4B1.2(a) (2003) (emphasis added). Application note 1 of that section provides that "[o]ther offenses are included as 'crimes of violence' if . . . the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted . . . by its nature, presented a serious potential risk of physical injury to another."

13

Guidelines *de novo*. *United States v. Charles*, 301 F.3d 309, 312-14 (5th Cir.2002)( *en banc*). *See also United States v. Riva*, 440 F.3d 722, 723 (5th Cir. 2006). The Texas endangerment-of-a-child statute provides that:

> "[a] person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engages in conduct that places a child younger than 15 years in imminent danger of death, bodily injury, or physical or mental impairment."

Tex. Pen. Code Ann. § 22.041(c) (2004). Neal's indictment, to which he plead guilty, for his child endangerment offense conviction charged that he:

> "did then and there intentionally, knowingly, recklessly, or with criminal negligence, engage in conduct that placed, Daysha Taylor, a child younger than 15 years in imminent danger of death, bodily injury, or physical or mental impairment, by fleeing from police officers in a motor vehicle traveling in excess of 90 mph . . . ."

Finally, the relevant sentencing guidelines provision, section 2K2.1 note 5, cross references the crime of violence definition found in section 4B1.2(a), which defines crime of violence as including, *inter alia*: "any offense . . . that . . . otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). The "involves conduct" language of the "otherwise" clause allows the sentencing court to look beyond the elements of the statute of conviction, to the defendant's actual conduct as set forth "in the count of which defendant was convicted." § 4B1.2 note 1; *United States v.*

*Charles*, 301 F.3d 309, 313 (5th Cir. 2002) (*en banc*) ("[W]e hold that a crime is a crime of violence under § 4B1.2(a)(2) only if, from the face of the indictment, the crime charged or the conduct charged presents a serious potential risk of injury to a person."); *United States v. Calderon-Pena*, 383 F.3d 254, 258 n.6 (5th Cir. 2004) (*en banc*) (comparing the "as an element" language, which makes the facts alleged in the indictment relevant only to pair down disjunctive statutes, with the broader "involves conduct" language, which puts the facts alleged in the indictment squarely at issue); *see also* U.S.S.G. § 4B1.2 Application Note 1 ("[o]ther offenses are included as 'crimes of violence' if . . . the conduct set forth (*i.e.,* expressly charged) in the count of which the defendant was convicted . . . by its nature, presented a serious potential risk of physical injury to another."). Where the defendant's actual conduct is still not clear from the face of the charging document, we proceed "under the assumption that his conduct constituted the least culpable act satisfying the count of conviction." *United States v. Houston*, 364 F.3d 243, 246 (5th Cir. 2004).

Neal argues that his crime (as set forth in the indictment) is not a crime of violence under 4B1.2(a)(2) for two reasons. First, he disputes that his conduct risked *physical* (as opposed to mental) injury, and second, he disputes that his conduct involved a *serious*

15

potential risk of that injury.[8]

[8]All parties have proceeded to this point on the tacit assumption that the indictment may be read as alleging that the child was in the speeding car.

    See, e.g., the following from the sentencing hearing:
        "THE COURT: . . . I'm looking at 4B1.2(a) application note 1(b), the conduct set forth, i.e., expressly charged, by its nature presented a serious potential risk of physical injury to another.
        The charge in the indictment is that the defendant was fleeing from police in a motor vehicle traveling in excess of 90 miles per hour *with a child in the vehicle*, and by its nature that would present a serious potential risk of physical injury to another.
        MR. WEST [defense counsel]: Well, for the Court to come to that conclusion the Court would be saying that any time somebody is speeding, then by its nature itself that's when it poses, quote, a serious risk.
        The 'serious' is the qualifying word, your Honor. A serious risk of danger to the child. That's why – and because there is allege[d] various mental states, the Court cannot – this does not allow the Court to determine, one, what the mental state is, because there is [sic]so many; and two, that the serious danger is another issue.
        THE COURT: All right. I hear you, Mr. West, and that is a good and interesting issue for appeal. This Court is prepared to hold that a person fleeing from the police in a vehicle *with a child in the vehicle* traveling at a speed of more than 90 miles per hour by the nature of that activity present a serious potential risk of physical injury to another?" (emphasis added).

At no time was it brought to the attention of the district court, or this court, that the indictment did not expressly allege that the child was in the speeding vehicle (or otherwise expressly state a particular specific relationship between the child and the vehicle) or argued below or in this court that that omission in the indictment rendered it insufficient for purposes of § 4B1.2 note 1. Because of this, we decline to *sua sponte* address that matter. We note that the PSR states in regard to this conviction that when the defendant's fleeing vehicle was finally stopped by the police the officers found the 18 month old child in the vehicle. There has never been any suggestion of a dispute as to those facts. No miscarriage of justice arises in holding that the conduct charged in the offense of conviction necessarily

16

On the first question, Neal notes that the Texas statute protects a young victim from either physical or mental impairment, while the sentencing guidelines are concerned only with the risk of physical injury. Indeed, a defendant may be convicted of endangerment in Texas even if the young victim risked only psychological damage. *See Vaughn v. State*, 530 S.W.2d 558, 561 (Tex.Crim.App. 1975). Compounding this ambiguity, Neal's indictment isn't very specific; it tracks the disjunctive language of the statute, charging that he "engage[d] in conduct that placed . . . a child . . . in imminent danger of death, bodily injury, *or* physical *or* mental impairment."

As discussed above, however, we are free to look beyond the language of the Texas statute and to consider the conduct set forth in the relevant count of the indictment. In so doing, we agree with the district court's conclusion, and hold that Neal's indictment, which charged him with "fleeing from police officers in a motor vehicle traveling in excess of 90 mph," sufficiently describes conduct that, by its nature, put Daysha Taylor, as well as others around him, at risk of *physical* injury.

On the second question, Neal argues that his conviction for child endangerment isn't a crime of violence under 4B1.2(a)(2) because his conduct, as charged in the indictment, doesn't present

---

included a physical relationship between the child and the car such as to present a serious potential risk of physical injury to the child from the alleged operation of the car.

17

a "serious potential risk" of physical injury, which Neal interprets to mean that physical injury must be "more likely than not."

In defining "serious potential risk," we have held that "[i]njury to another need not be a certain result, but it must be clear from the indictment that the crime itself or the conduct specifically charged posed this serious potential risk." *Charles*, 301 F.3d at 314. We have refrained, however, from assigning a certain probability to that phrase, and have relied instead on common sense. In *Charles*, for example, we held that simple motor vehicle theft, under Texas law, did not categorically involve conduct that posed a serious potential risk of injury to another. *Id.* Following *Charles*, however, we have often identified conduct that does satisfy that requirement. *See, e.g.*, *United States v. Riva*, 440 F.3d 722, 725 (5th Cir. 2006) ("[S]erious potential risk of injury is created when a child is confined without his or her consent"); *United States v. Valenzuela-Quevedo*, 407 F.3d 728, 732 (5th Cir. 2005) (Serious potential risk of injury is created by the "discharge [of]a dangerous weapon or firearm from an automobile . . . in the direction of any vehicle."); *United States v. Golding*, 332 F.3d 838, 840 (5th Cir. 2003) ("[A]n offense of unlawfully possessing a machine gun . . . constitutes conduct that presents a serious risk of physical injury to another."). We also note that the statute which Neal was convicted of violating requires

18

"*imminent danger* of death, bodily injury, or physical or mental impairment." Tex. Pen. Code Ann. § 22.041(c) (emphasis added). Texas courts have defined the term "imminent" in this statute as "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near"[9] and have held that "[i]t is not sufficient that the accused placed the child in a situation that is potentially dangerous. The accused's conduct must threaten the child with immediate, impending death, bodily injury, or impairment." *Millslagle v. State*, 81 S.W.3d 895, 898 (Tex.App.—Austin 2002, pet. ref'd).

Applying these Fifth Circuit and Texas cases to our present facts, we hold that "fleeing from police officers in a motor vehicle traveling in excess of 90 mph" constitutes conduct that posed a serious potential risk of physical injury to the passengers in Neal's car, to his pursuing officers, to pedestrians in or near the road, and to those in any other car he might have encountered on the road, among others. Neal's conduct here certainly posed a more serious risk of physical injury than did the defendant's conduct in *Charles*, where the defendant had merely exercised control over a car and drove it without the owner's consent, and where this court held that the conduct presented a risk of injury to *property*, not to another person. *See also Riva*, 440 F.3d at 725

---

[9]*Elder v. State*, 993 S.W.2d 229, 230 (Tex.App.-San Antonio 1999, no pet.) (quoting *Devine v. State*, 786 S.W.2d 268, 270 (Tex.Crim.App. 1989)).

(stating that, where the defendant locked a child in a closet, "a serious potential risk of injury is created when a child is confined without his or her consent.  Children are more vulnerable than adults . . . .").  We are also persuaded that, in cases such as this, which are based on commissions, not omissions, and which implicate physical, not mental injury, the Texas child endangerment statute's "imminent danger" requirement categorically satisfies the "serious potential risk" requirement of section 4B1.2(a)(2).  Accordingly, we affirm the district court's decision to categorize the defendant's child endangerment conviction as a crime of violence under section 4B1.2(a)(2).[10]

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

[10]Although Neal was sentenced on April 29, 2005, months after the Supreme Court's *Booker* decision, he contends in another point of error that the district court erred by making factual determinations using a preponderance of the evidence standard.  We are bound by *United States v. Mares*.  402 F.3d 511, 519 (5th Cir. 2005) ("The sentencing judge is entitled to find by a preponderance of the evidence all the facts relevant to the determination of a Guideline sentencing range . . . .").

20