**Bobby H. RUSSELL, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. WM86–58–S.**

United States District Court,
N.D. Mississippi, W.D.

Dec. 18, 1986.

---

David G. Hill, Oxford, Miss., for petitioner.

Robert Q. Whitwell, U.S. Atty. and Thomas W. Dawson, Asst. U.S. Atty., Oxford, Miss., for the U.S.

# MEMORANDUM OPINION

SENTER, Chief Judge.

Presently before the court is the petitioner's motion for return of property and for suppression of evidence seized during a search of premises used by petitioner. The court conducted a hearing on the matter, and the parties have submitted briefs on the issues. Having reviewed the testimony and evidence presented at the hearing and being otherwise fully advised, the court is of the opinion that petitioner's motion should be overruled.

## I. FACTS AND BACKGROUND.

During 1985 and 1986, the Internal Revenue Service (IRS) conducted an investigation of the financial and business affairs of the petitioner, Bobby H. Russell,[1] who conducted business as the sole proprietor of BHR Publishing Company in Tupelo, Mississippi. Petitioner publishes newspapers, magazines, and calendars and conducts country music shows for various organizations. To support these endeavors, Russell solicits advertising through telephonic contact.

On August 20, 1986, James Baker, special agent with the IRS' criminal investigation division, applied for a search warrant before United States Magistrate Norman Gillespie.[2] The issue now before this court is the validity of the search warrant issued by the magistrate.

Special Agent Baker's application for the search warrant[3] was accompanied by a 13–

---

1. The government has agreed not to present evidence to the grand jury arising out of or regarding items seized pending the outcome of the hearing of Russell's motion on its merits.

2. Gillespie is currently Clerk of the United States District Court for the Northern District of Mississippi and has served in that capacity for 12½ years. He is also a part-time United States magistrate and has served in that capacity for over six years. Gillespie has also served as an Assistant United States Attorney for over five years in addition to engaging in private practice for seven years.

The magistrate conducted a hearing in his chambers concerning the issuance of four search warrants: two by the IRS and two by the Bureau of Alcohol, Tobacco, and Firearms. The four search warrants were separate, but were related in part to petitioner Russell and his business. The only warrant at issue herein is the one issued as to the residence and business premises of Russell, which adjoined.

3. Special Agent Baker was assisted in the entire process by two Assistant United States Attorneys. Baker has been employed as a special agent for fifteen years. He has a degree in accountancy and has attended all of the IRS' inservice schools for criminal investigation and tax law. He has never been to law school and is not an attorney. Fifteen years ago, he had two or three days training in the service of search warrants, but he has had no updated training and has attended no seminars on this subject since that time. In his fifteen year career, he has executed six search warrants.

page affidavit which was divided into three parts separately designated. Part I describes the experience of Special Agent Baker, the premises to be searched, and the crime or violation which Russell is alleged to have committed.[4] Part II of the affidavit describes in detail the underlying facts and circumstances which provide the probable cause for the issuance of the search warrant. Part III of the affidavit accompanying the application is a 2½ page list and description of the documents and items to be seized.

A proposed search warrant was submitted to Magistrate Gillespie for his consideration along with the application and affidavit, and the magistrate considered the affidavit and the warrant in a side-by-side fashion. The testimony at the hearing indicated that the magistrate questioned Special Agent Baker on particular facts and circumstances in the case and that they discussed the matters contained in the affidavit. Baker testified that the magistrate specifically questioned him about Part III of the affidavit, which contained the list and description of items to be seized. Based on the specific facts contained in the affidavit, including a description of the premises to be searched and the items to be seized, the magistrate found that probable cause existed, and he authorized and issued the search warrant.

The warrant, as issued by the magistrate, required two independent attachments: one describing the premises to be searched, including a diagram of the floor plan and photographs of the premises, consisting of approximately 2½ pages, and another describing the items to be seized. The attachments were necessary because the form provided insufficient space to insert the required information. The second attachment, also consisting of 2½ pages, was identical to Part III of the affidavit submitted with the application of the search warrant. In fact, Special Agent

Baker testified that to avoid the risk of typographical error, he photocopied Part III of the affidavit and intended for that to be the second attachment to the search warrant. This second attachment describing the items to be seized, however, was not attached to the search warrant along with the attachment describing the premises to be searched. Herein lies the challenge to the validity of the search warrant.

The cause of the defect in the search warrant is unknown. Neither Magistrate Gillespie nor Special Agent Baker, the only witnesses to the conference and issuance of the warrant who testified at the hearing, could state with certainty the acts which caused the second attachment to be omitted from the search warrant. At the time the magistrate signed the warrant, both he and Baker were unaware that the attachment which described the items to be seized had been omitted from the warrant. Special Agent Baker intended for it to be attached and understood that it was attached when presented to the magistrate, but he did not physically observe whether or not it was attached. The magistrate does not remember seeing the second attachment to the warrant, but he did read and study the affidavit, which was identical. The testimony at the hearing reveals that the magistrate questioned Baker, who was under oath at all pertinent times, on several different issues in Part III of the affidavit. Based on a review of his files, however, the magistrate testified that there was no list attached to the warrant. Both the magistrate and Special Agent Baker understood that Baker's search was limited to the items specifically designated in Part III of the affidavit, which was identical to the second attachment to the warrant, although the face of the search warrant does *not incorporate by reference* any of the allegations in the affidavit.

---

4. The affidavit alleges that petitioner has violated 18 U.S.C. § 371 in that he conspired to impede the IRS in the performance of its lawful functions, and 26 U.S.C. § 7206(2) in that he willfully aided, assisted in, procured, counseled, or advised in the preparation or presentation of a return, affidavit, or claim, or other document which is false or fraudulent. The affidavit further alleges other criminal offenses committed in furtherance of said scheme or in conjunction therewith.

The special agent received the original warrant, on which he was to list the items actually seized, and the magistrate retained a copy of the warrant for his files. Baker was authorized by the Justice Department to seize only the items designated in the affidavit. The search was conducted the following day, and Baker served on petitioner Russell everything which the magistrate had given to Baker plus a computer-itemized list of the return. Baker also orally advised Russell of the items to be seized. At no time prior to the execution of the search warrant did Special Agent Baker know that the second attachment had been omitted from the warrant, although he thought that it should have been attached. He understood that his authority to search the premises was limited to the items listed in the affidavit. Baker first observed that the second attachment was omitted from the warrant when he served the warrant on petitioner Russell. He did not examine the warrant or its attachments from the time he entered the magistrate's office on August 20 until he served Russell on August 21.

Special Agent Baker and the other agents who conducted the search seized only items authorized and listed in the affidavit. A copy of the warrant and the items actually seized (the return) were left with Russell at the conclusion of the search.

Petitioner initiated this proceeding as an aggrieved person seeking return of his property seized pursuant to an allegedly unlawful search and seizure. See Fed.R. Crim.P. 41(e). The parties have since been able to reach an agreement as to the return of the items seized, or copies thereof. See Agreed Order dated September 24, 1986. The sole remaining issue is whether any evidence seized should be suppressed due to the defect in the search warrant, specifically because the second attachment, which listed and described the items to be seized, was omitted from the search warrant. No attack has been made in this case on the veracity of the allegations in the affidavit,

the neutral detachment of the magistrate, or the finding of probable cause by the magistrate. See, e.g., United States v. Gant, 759 F.2d 484, 488 (5th Cir.1985).

## II. CONTENTIONS OF THE PARTIES.

The government argues that Special Agent Baker sought and executed the warrant in good faith and that his actions were objectively reasonable in executing a warrant specifically authorized by the United States magistrate, neither of whom knew about the omission of the attachment to the search warrant. The government further contends that both Magistrate Gillespie and Special Agent Baker understood that, based on a finding of probable cause, the things that could be searched for and seized at the premises were limited to those items listed in the affidavit which was considered simultaneously with the application and proposed warrant by Magistrate Gillespie. This case, the government argues, is controlled by the Supreme Court's decision in Massachusetts v. Sheppard, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), and its progeny.

Petitioner Russell argues that the search warrant in this case was so facially deficient, because it did not describe the items to be seized, that a reasonable law enforcement officer could not reasonably rely on such warrant. Russell further contends that Baker lacked good faith in his execution of the warrant. Russell seeks to distinguish Sheppard on the grounds that in the action now before this court, the magistrate relied on Agent Baker's inadequate preparation of the warrant. The magistrate did not, according to Russell, examine in a neutral and detached manner the warrant which had been prepared by others and presented to him.

## III. CONCLUSIONS OF LAW.

The exclusionary rule, adopted by the United States Supreme Court in Weeks v.

*United States,* 232 U.S. 383, 398, 34 S.Ct. 341, 346, 58 L.Ed. 652 (1914), provides for exclusion of evidence procured by law enforcement officials through violation of a defendant's constitutional rights. The primary purpose of the rule is the deterrence of unlawful police conduct by removing the incentive for officials to procure evidence through violation of a defendant's constitutional rights. *Elkins v. United States,* 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669 (1960). The deterrent purpose of the exclusionary rule assumes that police have engaged in willful or negligent conduct which deprives a defendant of a constitutional right. By refusing to admit evidence gained through such conduct, the Court hoped to instill in the investigating officers a desire to act with greater care towards the rights of the citizenry. *Michigan v. Tucker,* 417 U.S. 433, 447, 94 S.Ct. 2357, 2365, 41 L.Ed.2d 182 (1974).

■ In *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court created what has come to be known as the "good-faith exception" to the exclusionary rule. Under that exception, evidence will be admitted in the prosecution's case-in-chief if it is obtained by law enforcement officials acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate, even if the affidavit on which the warrant was based was insufficient to establish probable cause. The Court concluded that "[i]n the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id.* at 925–26, 104 S.Ct. at 3422–23, 82 L.Ed.2d at 700–01. Exclusion remains an appropriate remedy, however, when at least one of four situations is present, including if the warrant was so facially deficient that it failed to particularize the place to be searched or the things to

be seized. *United States v. Harper,* 802 F.2d 115, 119 (5th Cir.1986); *United States v. Maggitt,* 778 F.2d 1029, 1034 (5th Cir. 1985).

The government argues that this case is controlled by *Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), the companion case to *Leon.* In *Sheppard,* the police were investigating a homicide which occurred on Saturday, May 5, 1979. During the course of that investigation, the officers received information which led them to focus their investigation on Sheppard, and they concluded that it would be advisable to obtain a search warrant to search Sheppard's house. The affidavit prepared in support of the warrant set forth the items the officers sought to seize. Because it was by then Sunday, the officers had difficulty in finding an appropriate warrant application, and when they finally located one, it was one designed for the search and seizure of controlled substances. Although the officers and the issuing judge attempted to modify the form warrant, everyone omitted changing that part of the warrant that authorized a search for "controlled substances." The items the officers sought to find were located in defendant's house. Those items were introduced at trial, and Sheppard was eventually found guilty of murder. The trial court and a majority of the justices on the Supreme Judicial Court for Massachusetts found that the warrant was constitutionally defective because the description in the warrant was completely inaccurate and the warrant did not incorporate the description contained in the affidavit. The state court found, however, that the officers believed that the warrant authorized the search that they conducted and that there was an objectively reasonable basis for the officers's mistaken belief.

The United States Supreme Court affirmed, noting that a reasonable police officer would have concluded that the warrant authorized a search for the materials outlined in the affidavit. The Supreme Court

also noted that the officers executing the warrant knew beforehand what was to be seized and, thus, that the case differed from one where an officer who was not involved in the application stage is called upon to execute the warrant and must therefore look to the warrant to determine what is to be seized. *Id.* at 989 n. 6, 104 S.Ct. at 3429 n. 6, 82 L.Ed.2d at 744 n. 6.

The facts in this case are more closely identified with the facts in *Sheppard* than those in *Leon.* In *Leon,* the trial court determined that the warrant was invalid because the supporting papers did not establish probable cause, and the Supreme Court accepted the conclusion of the court of appeals that probable cause was lacking. *Leon,* 468 U.S. at 3410, 3410 n. 2, 104 S.Ct. at 3410, 3410 n. 2, 82 L.Ed.2d at 685 & n. 2. In *Sheppard,* the supporting papers established probable cause, but the warrant did not describe the property to be seized.

There is little or no distinction between the facts in *Sheppard* and those in this case. Here, Special Agent Baker had been involved in a lengthy investigation concerning petitioner's alleged illegal activities. He personally appeared before the magistrate and presented the application, affidavit, and proposed warrant which he thought were complete. The magistrate read and studied the affidavit and the search warrant in a side-by-side fashion. *But cf. United States v. Breckenridge,* 782 F.2d 1317, 1319 (5th Cir.1986) (finding that the magistrate had failed to read underlying affidavit even though he appeared to be reading it as the agent orally explained the underlying facts to him). The magistrate questioned Special Agent Baker about the case and proposed search, including the items to be seized, which were listed and described in Part III of the affidavit. Furthermore, Baker was personally involved in conducting the search. He personally

handed to Russell the warrant and a computer-itemized list of the items to be seized, and he orally advised Russell of the items to be seized. Although the affidavit was not incorporated by the warrant, it is undisputed that Baker and the other officers knew the items for which they were searching. The items seized correspond with the items referred to in Part III of the affidavit.[5]

■ There is nothing in the record to indicate that Baker sought the warrant in anything other than good faith. Although he did not physically observe the magistrate read the second attachment to the warrant, he assumed that it was attached because the magistrate questioned him about the items to be seized. When Magistrate Gillespie signed the warrant authorizing the search, Baker had the right to conclude that the warrant authorized a search for the materials described in the supporting affidavit. To ensure that he served the papers upon Russell in the precise manner that Magistrate Gillespie had authorized, Baker put the signed documents in a folder, secured it, and wrote "to serve" on it, all without reviewing the documents to see if the magistrate had complied with the technicalities. It is undisputed that both the magistrate and the special agent believed that the warrant authorized a search for the items listed and described in Part III of the affidavit. The court finds the facts of this case even more persuasive than those in *Sheppard.* In that case, the officers and the state judge knew that the form as presented was defective. In the case now before this court, however, the officer and the magistrate were unaware of the technical defect, although they were fully aware of the precise scope of the proposed search. The list was obviously intended to be attached as evidenced by the face of the warrant which

5. Even if items other than those listed were seized, as long as the items were reasonably within the scope of the warrant, the search and seizure is appropriate. *See Andresen v. Maryland,* 427 U.S. 463, 479–82, 96 S.Ct. 2737, 2748–49, 49 L.Ed.2d 627 (1976); *United States v. Cantu,* 774 F.2d 1305, 1308 (5th Cir.1985). The court finds that all items seized were reasonably within the scope of the warrant.

states "see attached" in the space provided for a description of the items to be seized. Furthermore, Special Agent Baker recontacted Magistrate Gillespie on the day of the search concerning a particular paragraph of the items to be seized. This demonstrates their understanding that there were specific limits upon his discretion to search and seize.

In sum, the court finds that Special Agent Baker sought and executed the warrant in good faith and that his actions were objectively reasonable in executing the warrant authorized by the United States magistrate. The particular facts of this case dictate the conclusion that the mere fact that a description of the items to be seized was not attached to the search warrant does not make the fruits of the search invalid. See, e.g., United States v. Anderson, 618 F.Supp. 1335, 1342 (D.D.C. 1985) (reaching same conclusion on similar facts). The magistrate reviewed the affidavit and the warrant in a side-by-side fashion, the officer and the magistrate recognized the scope and limitations of the search, neither knew of the defect, and the officer took special precautions at the scene of the search to ensure that Russell was aware of the items for which the agents were searching. The purpose and spirit of the exclusionary rule have not been violated.

Petitioner's motion should be denied. An order in conformance with this opinion shall issue.