UNITED STATES of America,
Plaintiff-Appellee,

v.

James C. BRECKENRIDGE,
Defendant-Appellant.

No. 84–4816.

United States Court of Appeals,
Fifth Circuit.

Feb. 18, 1986.

Lowry C. Edwards, (Court appointed), DeKalb, Miss., for defendant-appellant.

George Phillips, U.S. Atty., Nicholas B. Phillips, Asst. U.S. Atty., Jackson, Miss., for plaintiff-appellee.

Before BROWN, JOHNSON and JOLLY, Circuit Judges.

JOHNSON, Circuit Judge:

Defendant James C. Breckenridge appeals from his conviction on one count of using a firearm during the commission of a felony in violation of 18 U.S.C. § 924(c)(1). In this case, the predicate felony for the section 924(c)(1) charge was possession with intent to distribute controlled substances. Breckenridge alleges that the district court erred in failing to suppress evidence, in rejecting his claim of prosecutorial vindictiveness, in finding the evidence sufficient to support his conviction, and in admitting evidence of his conviction for possession of marijuana. We reject Breckenridge's contentions and affirm.

## I. BACKGROUND

On January 3, 1983, Robert F. Alexander, Jr., an agent with the Mississippi Bureau of Narcotics, learned from a confidential informant that the defendant was selling controlled substances and that Breckenridge had received, or was shortly expecting to receive, a large quantity of drugs. The informant also related to Alexander that Breckenridge would attempt to break up the shipment of drugs to store them in various locations. The informant gave a detailed description of his past transactions with Breckenridge including the prices that he had paid for the various controlled substances. The informant also told Alexander how to find Breckenridge's residence and described the residence and the vehicles used by Breckenridge and his girl friend. Agent Alexander went with the informant to the vicinity of Breckenridge's residence, a house trailer.

Based on this information, Agent Alexander prepared an affidavit in order to obtain a search warrant. Agent Alexander and his fellow employees, who were under the mistaken impression that Breckenridge's residence was in Neshoba County, Mississippi, presented the affidavit to Judge Vernon Myers, a judge in Neshoba County. Judge Myers read the affidavit and questioned Alexander about its contents. Judge Myers, who shared the mistaken impression that Breckenridge's residence was in Neshoba County, determined that probable cause existed to search Breckenridge's trailer and signed the search warrant. While Alexander was still at Judge Myers' home, Neshoba County Sheriff J.A. Phillips, Jr., arrived and informed Alexander that Breckenridge's residence was in neighboring Kemper County, approximately one-half mile from the Neshoba County line. Sheriff Phillips volunteered to take Alexander and his fellow agents to the home of Judge George Smith, a judge in Kemper County. Judge Myers returned the search warrant to Agent Alexander, and Agent Alexander and Sheriff Phillips left for Judge Smith's home in Kemper County. The other Mississippi narcotics agents went directly to the vicinity of Breckenridge's residence to await Alexander's radio signal that the search warrant had been signed by Judge Smith.

At Judge Smith's residence, Agent Alexander presented the affidavit to Judge Smith and orally recounted its contents. While Alexander was testifying, Judge Smith appeared to be reading the affidavit. According to Sheriff Phillips' testimony,

Judge Smith questioned Agent Alexander for approximately five minutes concerning the probable cause for the search warrant. Judge Smith also testified at the suppression hearing that he insisted upon Alexander's presenting evidence besides Alexander's own word. Satisfied that Alexander had presented such evidence, Judge Smith signed and sealed the search warrant.

Alexander then radioed Agent Robert Earl Pierce that Judge Smith had signed the search warrant. Agent Pierce, along with four other agents, drove up to Breckenridge's house trailer. As the agents exited their car, Agent Pierce saw a person looking out through curtains at one window. Agent Pierce then testified that he went to the front door, walking between two doghouses which were for Doberman pinschers. Pierce testified that he could hear movement inside the trailer. Pierce loudly knocked on the door and yelled his identity as a narcotics agent. When no one answered the door, the agents knocked the door loose with a sledgehammer.

Upon entering the hallway, Agent Pierce confronted Breckenridge, who was holding a revolver. Breckenridge pointed the gun at Pierce. Pierce ordered Breckenridge to drop the gun and again identified himself as a narcotics agent. After several minutes, Breckenridge surrendered. Pierce heard a second person, who was in the bedroom, and ordered the person to come out. Breckenridge's girl friend, Cheryl Cheatham, came out of the bedroom. Pierce ordered Cheatham and Breckenridge, who were undressed, to lie face down on the floor in the hallway while Pierce checked to see that no one else was in the residence. Cheatham and Breckenridge were then allowed to dress and were taken to the living room area where the agents found marijuana lying on an end table next to a couch. The two were arrested and advised of their rights. After Agent Alexander arrived with the search warrant, the agents began their search and discovered a large quantity of controlled substances in the residence, over $9,700.00 in United States currency, and five pistols.

Subsequently, Breckenridge was convicted in Mississippi state court of possession of controlled substances with the intent to distribute them. Breckenridge was also indicted on the instant federal charge and was convicted. Breckenridge was sentenced to serve one year in prison for the federal charge.

## II. THE MERITS

Breckenridge appeals on four issues: (1) the failure of the trial court to suppress the items obtained in the search of his residence; (2) the sufficiency of the evidence; (3) alleged prosecutorial vindictiveness; and (4) use of his Mississippi conviction to impeach his federal trial court testimony. The Court first examines the motion to suppress evidence obtained from the search.

### A. *Motion to Suppress*

During the federal trial court proceedings, the district judge carefully considered Breckenridge's motion to suppress the evidence, including firearms and illegal drugs, obtained during the search. After hearing evidence from the witnesses, the district judge held that the evidence at the suppression hearing failed to establish

> that Judge Smith properly determined that Officer Alexander's allegations established probable cause under the totality of circumstances analysis for determining the existence of probable cause as enunciated in the case of *Illinois v. Gates.* Judge Smith did not read the affidavit and was not clear in his testimony with reference to his understanding as to what facts were communicated to him by Officer Alexander.

Supp. Record Vol. II at 4–5. Thus, the district court found fault with the search warrant because of the *magistrate's* failure to read the underlying affidavit, even though the district judge specifically noted that Judge Smith appeared to be reading the affidavit as Agent Alexander orally explained the underlying facts to him. The district court noted that under the United States Supreme Court's recent decision in

*United States v. Leon,* — U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the primary purpose of the exclusionary rule is to deter police misconduct. The district court then applied the good faith exception to the exclusionary rule as set forth in *Leon:*

> In the *Leon* case, the [Supreme] Court recognized the good-faith exception, allowing the introduction of ... "evidence seized in reasonable good-faith reliance on a search warrant that is subsequently held to be defective." It is clear to the [District] Court that Agent Alexander and the other law enforcement officers involved took the reasonable steps that should have reasonably been expected of them to obtain a valid search warrant. They applied to two different judges to ensure that the warrant was valid. Alexander prepared an affidavit setting forth in sufficient detail the facts supporting his application for a warrant which he presented to both Judge Myers and Judge Smith. He was placed under oath by both judges, and to both he recounted the facts included in his affidavit.

Supp. Record Vol. II at 5–6. The district court also noted that Agent Alexander spent several minutes explaining the underlying facts and circumstances to Judge Smith. The district court concluded that the state narcotics agents had done "everything reasonably necessary" to obtain the warrant and that "Alexander and the other officers involved could objectively and in good faith rely upon the warrant issued by Judge Smith." *Id.* at 6.

This Court has examined the *Leon* good faith rule in several recent opinions. *See United States v. Maggitt,* 778 F.2d 1029, 1035 (5th Cir.1985); *United States v. Meri-*

da, 765 F.2d 1205 (5th Cir.1985); *United States v. Gant,* 759 F.2d 484 (5th Cir.), cert. denied, — U.S. ——, 106 S.Ct. 149, 88 L.Ed.2d 123 (1985); *United States v. Settegast,* 755 F.2d 1117 (5th Cir.1985).[1] In *Leon,* the Court noted that exclusion of evidence obtained through an invalid warrant "should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Leon,* — U.S. at ——, 104 S.Ct. at 3419 (footnote omitted). The Supreme Court emphasized that, where the case involves a police officer acting in objective good faith pursuant to a warrant, "there is no police illegality and thus nothing to deter." — U.S. at ——, 104 S.Ct. at 3420. The Supreme Court concluded, "Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Id.* (footnote omitted).

█ The Supreme Court noted four instances where suppression of the evidence should remain as an appropriate remedy:

1) the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit (citing *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978));

2) the magistrate abandoned his judicial role and failed to perform his neutral and detached function (citing *Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979));

3) the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" (quoting *Brown v. Illinois,* 422 U.S. 590, 610–11, 95 S.Ct.

---

1. We deal only with the federal district court's determination that the agents acted in good faith and do not reach the issue of whether Judge Smith properly reviewed the affidavit. A determination that the search warrant is invalid "is not always necessary before reaching the issue of the objective good-faith exception of *Leon.*" *Maggitt,* 778 F.2d at 1033. This is particularly true where the issue of the search warrant's validity raises no novel issues of law which may be useful in guiding law enforcement officers and magistrates. *Id. See also*

*Illinois v. Gates,* 462 U.S. 213, 264–65, 103 S.Ct. 2317, 2346, 76 L.Ed.2d 527 (1983) (White, J., concurring in judgment). Since it is well established that the magistrate must not act as a rubber stamp but must instead perform the function of a "neutral and detached" judicial officer, *see Aguilar v. Texas,* 378 U.S. 108, 111, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723 (1964), no such novel question is presented. *See generally* 2 W. LaFave, Search and Seizure § 4.2 (1978 & 1986 Supp.).

2254, 2265–66, 45 L.Ed.2d 416 (1975) (Powell, J., concurring)); or

4) the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized (citing *Massachusetts v. Sheppard,* —— U.S. ——, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984)).

*Maggitt,* 778 F.2d at 1034 (citing *Leon,* —— U.S. at ——, 104 S.Ct. at 3421–22; *Gant,* 759 F.2d at 487). On appeal, this Court's review accepts the facts underlying the district court's determination of good faith unless they are clearly erroneous; the ultimate conclusion of the objective reasonableness of the agents' reliance on the warrant, however, is a question of law subject to de novo review. *See Maggitt,* 778 F.2d at 1035.

■ In the instant appeal, Breckenridge asserts all but the last exception to *Leon's* good faith rule. Breckenridge asserts first that the underlying affidavit was so deficient as to show the state agents' bad faith. We find no merit to this contention. The affidavit stated that the informant had proven reliable in past drug investigations in the same area. The affidavit was detailed and based on the informant's personal dealings with Breckenridge. Information concerning the defendant's residence was verified by Agent Alexander. Thus, the agents' reliance on the underlying affidavit does not constitute objective bad faith. Indeed, affidavits much less detailed have formed an adequate basis for establishing probable cause. *See, e.g., Christian v. McKaskle,* 731 F.2d 1196, 1200 (5th Cir.1984); *United States v. Guinn,* 454 F.2d 29, 35 (5th Cir.), *cert. denied,* 407 U.S. 911, 92 S.Ct. 2437, 32 L.Ed.2d 685 (1972).

■ Secondly, Breckenridge argues that Judge Smith did not act as a "neutral and detached" magistrate in issuing the warrant and that exclusion of the evidence therefore should be required. *See, e.g.,*

*Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979) (issuing magistrate participated in search). The "absence of a neutral and detached magistrate" exception to *Leon's* good faith may also extend to situations in which officers while presenting the affidavit realize that the magistrate served only to rubber-stamp a previous decision reached by the police. *See Aguilar,* 378 U.S. at 111, 84 S.Ct. at 1512. *See also* LaFave, *"The Seductive Call of Expediency": United States v. Leon, Its Rationale and Ramifications,* 1984 U.Ill.L.Rev. 895, 917. This exception to the good faith rule must nevertheless be read in the context of the Supreme Court decision in *Leon,* which emphasized that "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." —— U.S. at ——, 104 S.Ct. at 3418.[2]

■ Following this analysis, the district court held that, although Judge Smith actually did not fully perform his role, he appeared to Agent Alexander to be doing so. The district court noted that Judge Smith insisted that Agent Alexander present evidence to support his request for a warrant. Agent Alexander complied and presented the affidavit both orally and in writing. The district court noted Sheriff Phillips' testimony that Judge Smith appeared to have read the underlying affidavit. We find the district court's findings of fact well supported by the record and, applying our de novo review of the legal conclusion, agree that the purposes of the exclusionary rule, as enunciated in *Leon,* would not be served by suppression of the fruits of the search. The agents applied to two different judges and received judicial approval to proceed with the search. Most importantly, Judge Smith appeared to both Agent Alexander and Sheriff Phillips to have ful-

---

**2.** As one commentator has noted, "Thus, the mere fact that the person who issued the warrant did not as a general matter or in the circumstances of the particular case qualify as a neutral and detached magistrate is not itself determinative.... [T]he circumstances show-

ing the magistrate has 'wholly abandoned his judicial role' must have been known by (or, at least reasonably knowable by) the police." LaFave, *supra* at 916–17 (footnotes and citations omitted).

filled his duty to act as a "neutral and detached" magistrate. To suppress the evidence on this ground would "punish [the police for] the errors of judges and magistrates," in defiance of the command of *Leon*, —— U.S. at ——, 104 S.Ct. at 3418.

Finally, Breckenridge asserts that the underlying affidavit was deceptively drawn and contained factual misrepresentations. *See Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *Leon*, —— U.S. at ——, 104 S.Ct. at 3421–22 (recognizing *Franks* exception to good faith rule). Under *Franks* and *Leon*, "[s]uppression ... remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Leon*, —— U.S. at ——, 104 S.Ct. at 3421. "There is ... a presumption of validity with respect to the affidavit supporting the search warrant." *Franks*, 438 U.S. at ·171, 98 S.Ct. at 2684. Breckenridge argues·three alleged misrepresentations which show "'by a preponderance of the evidence that the misrepresentation was made intentionally or with reckless disregard for the truth.'" Defendant's Brief at 32 (quoting *United States v. Namer*, 680 F.2d 1088, 1094 (5th Cir.1982)). The first is that the affidavit stated that the drugs had arrived at Breckenridge's house whereas Agent Alexander stated at the suppression hearing that the drugs were to arrive afterwards. Breckenridge's contention misreads the affidavit. The affidavit states that the informant was at Breckenridge's residence when he returned from a trip "for the purpose of purchasing drugs" and that Breckenridge planned to "stash" the drugs on January 4. Agent Alexander's trial testimony adds only that the drugs "were there or·... were arriving in a short period of time."· Record Vol. II at 61. We see no contradiction or deliberate falsity. Secondly, Breckenridge contends that a price list in the affidavit based on Agent Alexander's experience, rather than the informant's information, indicates that the affidavit was deceptively drawn. Agent Alexander's testimony, however, stated that the references to prices actually paid by the informant were based on the informant's statements. Third, Breckenridge asserts that the affidavit does not clearly state which information was obtained from the informant and which came from the informant's "middleman." At the hearing, however, Agent Alexander stated that the informant's information. was based on the informant's personal contact, which was confirmed by the middleman. In sum, there is no indication of any falsity by Agent· Alexander which would impair his good faith in executing the warrant.[3]

### B. *Other Contentions*

Breckenridge also challenges the sufficiency of the evidence to sustain his conviction under 18 U.S.C. § 924(c)(1).[4] Breckenridge's sufficiency challenge, however, is effectively against the jury instructions, which, Breckenridge contends, allowed the jury to convict him for mere possession of the firearms, rather than "use." Breckenridge's contention is without merit. The district judge instructed

---

**3.** We find no merit to Breckenridge's argument that the search warrant was improperly executed because of a forcible entry. The agents announced their presence and purpose loudly; at least one agent thought he saw someone looking out a window upon arrival. Under such circumstances, we see no error in the district court's determination that the warrant was properly executed. *See United States v. Mendoza*, 433 F.2d 891 (5th Cir.1970), *cert. denied*, 401 U.S. 943, 91 S.Ct. 953, 28 L.Ed.2d 225 (1971). *See also United States v. Curry*, 530 F.2d 636 (5th Cir.) (nighttime search), *cert. denied*, 429 U.S. 829, 97 S.Ct. 89, 50 L.Ed.2d 93 (1976).

**4.** 18 U.S.C. § 924(c)(1), prior to a recent amendment, read:

(c) Whoever—
(1) uses a firearm to commit any felony for which he may be prosecuted in a court of the United States, ...

shall, in addition to the punishment provided for the commission of such felony, be sentenced to a term of imprisonment for not less than one year nor more than ten years.

the jury that the defendant's possession must be "an integral part of the felony" to convict. *See United States v. Mason,* 658 F.2d 1263, 1270–71 (9th Cir.1981). Counsel for defendant expressly accepted this instruction without objection on two separate occasions and obviously did not view it as conflicting with Breckenridge's defense that he acted only reflexively. The evidence was sufficient to sustain the conviction.

 Breckenridge also contends that the district court erred in allowing the Government to impeach Breckenridge's trial testimony by asking Breckenridge if he had previously been convicted of possession of marijuana. Breckenridge concedes that such evidence may be used for impeachment under Fed.R.Evid. 609 [5] but argues that the prejudicial impact exceeded any probative impeachment value since the state conviction arose out of the same facts as those for Breckenridge's felony indictment. *See United States v. Martinez,* 555 F.2d 1273 (5th Cir.1977). We see no such error. The trial court allowed the Government only to question Breckenridge whether he had previously been convicted of possession with intent to sell marijuana. The trial court expressly stated that such evidence was to be admitted solely for impeachment and sua sponte cut off the Government's questioning whether the conviction involved the same facts. Moreover, the evidence of Breckenridge's possession of controlled substances with intent to distribute was strong. Thus, the central issue at trial was Breckenridge's "use" of the gun, and it therefore may be concluded that "the instant charge and the previous state conviction did not involve the same elements, issues or defenses." *United States v. Poteet,* 573 F.2d 351, 353 (5th Cir.1978). It cannot be held that use of the prior conviction resulted in reversible error.

### III. CONCLUSION

We have examined Breckenridge's other points of error, including his claim of prosecutorial vindictiveness, and find them frivolous. Therefore, the judgment of the district court is

AFFIRMED.

---

5. Federal Rule of Evidence 609 provides:

   (a) **General rule**

   For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.