UNITED STATES of America, Plaintiff,

v.

Jody Charles THOMAS, Defendant.

No. MO–97–CR–041.

United States District Court,
W.D. Texas,
Midland/Odessa Division.

Dec. 2, 1997.

Thomas P. Beery, Assistant U.S. Attorney, Midland, TX, for U.S.

Jose Antonio Chavez, Odessa, TX, for Defendant.

## AMENDED ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

FURGESON, District Judge.

On this day, the court amends its Order, signed and filed on November 25, 1997, regarding the Motion to Suppress Evidence filed by Defendant Jody Charles Thomas ("Defendant") on September 15, 1997. This Amended Order does not change the substance of the original Order; rather, it simply changes the presentation of some of the details. Upon due consideration, this court remains of the opinion that the Motion to Suppress Evidence should be GRANTED.

### BACKGROUND

On July 18, 1997, the Midland County Crime–Stoppers received a phone call from a confidential informant who requested to speak to Terry Lowe. Sergeant Lowe had previously served as the Police Coordinator for Midland County Crime–Stoppers from January 1991 to September 1995. He now serves in the Criminal Investigations Division of the Midland County Sheriff's Office.

Crime–Stoppers informed the caller that Sergeant Lowe no longer served as Police Coordinator and then gave the caller Lowe's telephone number at the Sheriff's Office. At approximately 9:30 a.m. the same day, the informant called Sergeant Lowe personally. The informant told Sergeant Lowe of previous tips the caller had given to Crime–Stoppers. Sergeant Lowe identified the caller by voice and also recognized the informant's previous tips.

Crime–Stoppers policy is that each tipster is given an identification number. The organization does not know who is making each tip. Money is placed into an account, and the informant gets the money using the identification number. For narcotics information, money is paid based on the amount of drugs recovered, the number of arrests made, and the amount of danger to the informant for the information given.

Sergeant Lowe testified that he recalled five previous tips given by the informant, and that all five resulted in arrests and/or seizures of narcotics. Lowe said that, to his knowledge, the caller had never given a false tip.

The caller informed Sergeant Lowe that the residents of Apartment 803, 1212 E. Wadley, were in possession of guns and crack cocaine. The informant claimed to have been in the residence and had personally seen the items a few hours before. Acting on the tip, Sergeant Lowe did a "walk-by" of the complex to be able to identify the apartment for a search warrant. On the apartment door was a sign, which the informant had mentioned. The sign read:

"Private house. Do not come here if you were not invited. Do not knock hard.

P.S. We'll bust you in yo [sic] ass. Owner"

On this basis Sergeant Lowe prepared an affidavit to secure a search warrant to enter Apartment 803. He testified that he did not seek to ascertain the names of the residents of the apartment; consequently, he did not know if the residents had a criminal background of any kind. He did not wish to make an inquiry at the apartment manager's office for fear that the inquiry might leak back to the residence. There is also no indication that Sergeant Lowe made any investigation to determine if the weapons re-

ported to be in the apartment were properly registered or legally obtained. Except for the walk-by, he did no surveillance of any kind on the apartment. In addition, based on the walk-by, Sergeant Lowe saw nothing from the outside of the residence to indicate that criminal transactions were being conducted inside the apartment. Finally, he did not testify that he had any knowledge to indicate that an emergency existed requiring immediate action.

In the affidavit, Sergeant Lowe swore that the informant was credible, had given reliable information two times in the past, and had witnessed the illegal activity in the past 48 hours. In fact, Sergeant Lowe testified that the informant had given reliable information five times, and the information received now was only two hours old. The officer did not mention that the informant first called Crime–Stoppers before calling him. Lowe testified that he did not mention the Crime–Stoppers connection because the informant called him directly; he did not receive the tip through Crime–Stoppers. The complete affidavit reads as follows:

### AFFIDAVIT FOR SEARCH AND ARREST WARRANT
### STATE OF TEXAS, COUNTY OF MIDLAND

THE UNDERSIGNED AFFIANT, BEING A PEACE OFFICER UNDER THE LAWS OF THE STATE OF TEXAS, AND BEING DULY SWORN, ON OATH MAKES THE FOLLOWING STATEMENTS AND ACCUSATIONS:

1. THERE IS IN MIDLAND, MIDLAND COUNTY, TEXAS, A SUSPECTED PLACE DESCRIBED AND LOCATED AS FOLLOWS: 1212 E.Wadley Ave., # 803. Said apartment is located in building eight and numbered 803 on the front door of same. Said apartments are Ranchland Apartments. The apartment to be searched is a single family dwelling. The apartment is described as being brown brick with tan wood trim and green front door bearing the numbers 803. Said building is south of the intersection of Wadley Ave. and Carver Street and the building runs north and south with the front door facing west.

2. THERE IS AT SAID SUSPECTED PLACE AND PREMISES, PROPERTY CONCEALED AND KEPT IN VIOLATION OF THE LAWS OF THE STATE OF TEXAS AND DESCRIBED AS FOLLOWS: _Cocaine_

3. SAID SUSPECTED PLACE AND PREMISES ARE IN CHARGE OF AND CONTROLLED BY EACH OF THE FOLLOWING PERSONS: _____ _FNU LNU_

4. IT IS THE AFFIANT'S BELIEF AND AFFIANT HEREBY CHARGES AND ACCUSES, THAT: On or about _18 July_ 1997, and on or about the above described premises, the above named and/or described individual(s) did then and there, intentionally and knowingly possess against the laws of the state of Texas and were in the possession of _Cocaine_

5. AFFIANT HAS PROBABLE CAUSE FOR SAID BELIEF BY REASON OF THE FOLLOWING FACTS: On this date, _18 July 1997_, Affiant received information from a confidential informant, hereinafter called C.I., whose identity must remain confidential due to the fact that death or serious bodily harm would occur to C.I. if the identity of the same was or were disclosed, to wit: C.I. has been at the above described prernised [sic] within the past 48 hours preceding this date and personally observed the above named controlled substance on or about the above described premises. Further, C.I. is credible and has given information verified as truthful, reliable and credible at least two times in the past to affiant. C.I. is familiar with the appearance, packaging, handling, use and methods by which the named controlled substance is introduced into the human body. Further, Affiant alleges the above constitute specific articulable facts from which a reasonable person could draw rational inference that large sums of cash found at the premises (absent proof to the contrary) were derived from controlled substances' sale(s) and therefore subject to seizure.

AFFIANT IS AN INVESTIGATOR WITH THE MIDLAND COUNTY SHERIFF'S DEPARTMENT. AFFIANT RECEIVED THE ABOVE INFORMATION FROM CI ON _18 July_, 1997. AFFIANT HAS GOOD REASON TO BELIEVE AND DOES BELIEVE THE ABOVE FACTS AND THAT THE

ABOVE OFFENSE HAS BEEN COM-MITTED BY THE ACCUSED BASED UPON HIS KNOWLEDGE OF THESE FACTS, AFFIANT'S OWN INVESTIGA-TION, OFFICIAL MIDLAND COUNTY SHERIFF'S DEPARTMENT REPORTS, FILES AND INTELLIGENCE INFOR-MATION.

WHEREFORE, AFFIANT REQUESTS ISSUANCE OF A WARRANT AUTHO-RIZING SEARCH OF THE ABOVE DE-SCRIBED PREMISES FOR SAID PER-SONAL PROPERTY AND SEIZURE OF SAME, AND ARREST OF EACH SUS-PECTED PARTY.

[Terry Lowe]
AFFIANT

Midland County, Texas
SUBSCRIBED AND SWORN TO ME
THIS 18 DAY OF July, 1997.

[M. Moore]
MAGISTRATE

Sergeant Lowe prepared both his affidavit and the search warrant. In preparing the warrant, Lowe inadvertently typed "Apartment 804" instead of Apartment 803. The magistrate judge did not notice the error, and signed the warrant at 11:24 a.m., about two hours after Lowe received the tip.

That afternoon, the warrant was executed. Sergeant Lowe was part of the team that executed the warrant. After a briefing, a number of officers went to the apartment complex. The officers obtained a master key from the apartment manager. Sergeant Lowe, at this point, left a deputy with the manager to ensure that the manager did not call and inform the residents of apartment 803 that the police were there.

Sergeant Lowe and two other deputies went to the patio area while the remaining officers stayed at the front. The rear officers tossed a "flashbang" as more officers attempted to use the master key. Inside deadbolts were fastened, however, and so the officers entered using a battering ram. After tossing the flashbang, Lowe heard two gun shots. A moment later, an officer opened the patio door and stated that the apartment was secure.

Lowe testified that Corporal Kent Spencer was the first to enter the apartment. The Defendant, Mr. Jody Charles Thomas, was seen wearing blue jeans and a bullet proof vest. Defendant was armed with an SKS assault rifle and was "bringing it to bear" on the officers. Corporal Spencer fired two shots; one shot struck Defendant in the left wrist and the other missed. The bullet that struck Defendant exited his body and was found at the scene.

In the apartment the police found a "significant amount" of crack cocaine, also described by Terry Lowe as a "distribution amount." Police also found a second SKS assault rifle and numerous semi-automatic rifles. The entire sequence of events, from the tip to the arrest, occurred from mid-morning to the afternoon of one day, July 18, 1997.

## DISCUSSION

As an initial matter, the court, *sua sponte*, raised with the parties the issue of no-knock entry pursuant to *Richards v. Wisconsin*, 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997). Since the parties have agreed that the facts of this case do not give rise to the no-knock issue, the court will not consider it.

■ The Supreme Court held in *United States v. Leon* that the exclusionary rule need not apply in every case where police officers used a search warrant subsequently found to be invalid. *U.S. v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Rather, the rule should apply where suppression of the evidence obtained will deter unconstitutional police activity. *Leon*, 468 U.S. at 920, 104 S.Ct. at 3420, 82 L.Ed.2d at 697.

■ No finding that the warrant was invalid is necessary before the court examines the good faith issue. *United States v. Maggitt*, 778 F.2d 1029, 1033 (5th Cir.1985), *cert. denied*, 476 U.S. 1184, 106 S.Ct. 2920, 91 L.Ed.2d 548 (1986). Rather, the court should first determine whether the good faith exception, as it has come to be known, applies. *United States v. Mitchell*, 31 F.3d 271, 275 (5th Cir.), *cert. denied*, 513 U.S. 977, 115 S.Ct. 455, 130 L.Ed.2d 363 (1994). If the good faith exception does not apply, then the

court is to examine if the warrant is supported by probable cause. *Id.*

■ The Fifth Circuit has noted four instances where, under *Leon*, the good faith exception will not apply. *United States v. Garcia*, 27 F.3d 1009, 1013 (5th Cir.), *cert. denied*, 513 U.S. 1009, 115 S.Ct. 531, 130 L.Ed.2d 435 (1994); *United States v. Breckenridge*, 782 F.2d 1317, 1320 (5th Cir.), *cert. denied*, 479 U.S. 837, 107 S.Ct. 136, 93 L.Ed.2d 79 (1986). Defendant alleges two of those situations are present in this case: one, that "the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit" in violation of *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); and two, "that the warrant is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Breckenridge*, 782 F.2d at 1320 (quoting *Brown v. Illinois*, 422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265–66, 45 L.Ed.2d 416, 431 (1975)).[1]

### A. The *Franks* Issue

■ Under *Franks* and *Leon*, suppression of evidence obtained pursuant to a search warrant remains appropriate if the magistrate judge was misled by either false statements or statements made with reckless disregard for the truth. *Leon*, 468 U.S. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 698–99. The Defendant is entitled to exclusion of the evidence if he can show *both* that "the allegations in the supporting affidavit were a deliberate falsehood or made with reckless disregard for the truth," *and* that "the remaining portion of the affidavit, or an affidavit containing the omitted information, would not have been sufficient to support a finding of probable cause." *United States v. Dickey*, 102 F.3d 157, 161 (5th Cir.1996); *see also United States v. Tomblin*, 46 F.3d 1369 (5th Cir.1995). While Defendant is accurate in concluding that an inference of reckless disregard can be made merely by failing to include relevant information in an affidavit,

"the defendant must show that the omitted material would be 'clearly critical' to the finding of probable cause." *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir.1993) (citing *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir.1986)).

■ Defendant contends that the failure to inform the magistrate judge that the anonymous call originated at Crime–Stoppers was a material omission affecting the finding of probable cause. He argues that Texas magistrate judges may not, under Texas law, issue warrants solely on the basis of Crime–Stoppers tips. *See, e.g., Parish v. State*, 939 S.W.2d 201, 204 (Tex.App.—Austin 1997 no writ hist.); *Rojas v. State*, 797 S.W.2d 41 (Tex.Crim.App.1990 no writ); *Angulo v. State*, 727 S.W.2d 276, 278 (Tex.Crim.App. 1987 no writ). Defendant's recitation of Texas law is correct; therefore, given the requirements of state law, the court assumes that the magistrate judge in this case, who is an outstanding judicial officer, would have declined to issue the search warrant if he had been informed that the affidavit was based solely on an anonymous Crime–Stoppers tip. *See Parish*, 939 S.W.2d at 204 ("when [an anonymous] tip itself provides no indicia of reliability, such as the prediction of future actions, there must be something more, such as the observance of criminal activity"). Although the record indicates that the magistrate was not informed the tip was anonymous, Defendant's argument still must fail for two reasons.

■ First, federal law, and not state law, controls when determining if the exclusionary rule should apply pursuant to a violation of the Fourth Amendment. *California v. Greenwood*, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988); *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *United States v. Walker*, 960 F.2d 409, 415 (5th Cir.), *cert. denied*, 506 U.S. 967, 113 S.Ct. 443, 121 L.Ed.2d 362 (1992). Though Texas may hold its officers to a higher stan-

---

1. The government correctly notes that the typographical error on the warrant as to the apartment number, 804 instead of 803, does not give rise to a third *Leon* exception, that the warrant so fails to particularize the things to be seized, or the place to be searched, that officers could not reasonably presume it to be valid. *See Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984); *see also Garcia*, 27 F.3d at 1013. Defendant does not contest this point.

dard than federal law requires, the inquiry in federal court is whether such an omission violates the federal Constitution. *Walker,* 960 F.2d at 415.

More importantly, even if a federal warrant would not have issued had the judge known about the Crime–Stoppers connection, Defendant cannot clear the first hurdle to show a *Franks* violation. Both parties agreed that Sergeant Lowe acted in subjective good faith, indicating that he did not perpetrate a deliberate falsehood on the magistrate judge. Further, the officer's affidavit acknowledges that the residents of the apartment were unknown ("FNU LNU"—First Name Unknown Last Name Unknown) and that his basis for seeking a warrant was an uncorroborated tip that drugs and guns were present in the residence a few hours before. Given that he had personally received the tip instead of receiving it through Crime–Stoppers, the officer believed that the manner in which the informant received his telephone number at the Investigations Division would not aid in the magistrate's determination of probable cause. The court holds that such a belief, reasonable or unreasonable, does not rise to the level of reckless disregard for the truth.

In *United States v. Jacobs,* a narcotics case that Defendant relies on, the results of a first dog sniff were misleadingly presented to the magistrate judge, and the absolute failure of the second dog to show any interest in the Federal Express package was never communicated to the judge or the affiant. *Jacobs,* 986 F.2d at 1233. The Eighth Circuit held such omissions to be clearly critical to a finding of probable cause, and thereby allowed an inference of reckless disregard for the truth from the failure to include the omitted information.

The facts in this case are not so extreme. Moreover, the parties have essentially stipulated that Sergeant Lowe, in his affidavit, mentioned all the information that he believed to be relevant, including that the tipster was confidential and that the information was uncorroborated. The one omission was the circuitous route that the informant used to find Sergeant Lowe. Regardless of whether the omission was clearly critical to a

finding of probable cause, no inference of reckless disregard is possible here in light of the agreement of the parties that Sergeant Lowe acted in subjective good faith. Certainly, there has been no showing that Sergeant Lowe knew Texas law and intentionally tried to circumvent it. Thus, Defendant cannot show that a *Franks* violation has occurred, because (1) the evidence does not support a finding that the officer's affidavit contained a deliberate falsehood, and (2) any inference that the officer's omission was made with reckless disregard for the truth is inconsistent with the stipulation that he acted in good faith, and must be rejected.

Accordingly, Defendant's Motion to Suppress on this ground is DENIED.

## B. The Probable Cause Issue

As mentioned earlier, the court need not conduct a probable cause inquiry unless the *Leon* good faith exception is found not to apply. However, this analytical framework is not helpful when examining whether the affidavit underlying the warrant truly lacks any indicia of probable cause. The court finds it more useful to examine the leading cases on probable cause from the Supreme Court and the Fifth Circuit, before determining whether the affidavit is utterly lacking in probable cause.

### 1. A Brief Overview of the Law of Probable Cause in the Fifth Circuit

Probable cause is a "fluid concept" that depends on the specific factual context of any given case. *Illinois v. Gates,* 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527, 544 (1983). In *Gates,* the Supreme Court adopted a totality-of-the-circumstances test to determine probable cause. *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548. "[T]he duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Gates,* 462 U.S. at 238–39, 103 S.Ct. at 2332, 76 L.Ed.2d at 548 (internal quotations omitted). The magistrate's determination is entitled to deference in marginal cases. *United States v. Fooladi,* 703 F.2d 180, 184 (5th Cir.1983), *cert. denied,* 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 382 (1985).

The *Gates* decision involved a warrant based on an anonymous letter detailing specific, seemingly innocuous actions that a drug smuggling couple would undertake in the near future in furtherance of their criminal activity. The letter predicted that Mrs. Gates would drive the family car to Florida and then fly back home, while Mr. Gates would fly to Florida and then drive the car back to Illinois. The police officers placed the Gateses under surveillance and watched them perform these curious actions in the manner described by the letter. The police also confirmed the address of the Gateses as listed in the letter. Based on the letter and the police corroboration, a search warrant was issued.

The Supreme Court held that the police had probable cause to obtain a warrant. The Court relied on the letter writer's specificity, particularly with respect to the future actions of third parties. The Court also noted the importance of corroborating anonymous tips, finding that a police investigators' independent corroboration of key details also weighs in favor of finding probable cause. "[M]ere ratification of the bare conclusions of others," such as an affidavit that asserts solely that the affiant has "received information from a credible person and [does] believe that heroin is stored in a home, is ... inadequate." *Gates,* 462 U.S. at 239, 103 S.Ct. at 2333, 76 L.Ed.2d 527 (referring to and affirming the end result in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964)).

Because the Supreme Court expressly upheld the end result in *Aguilar,* even while rejecting the *Aguilar–Spinelli,* two prong test for determining if probable cause exists, the facts of *Aguilar* are relevant. In *Aguilar,* two Houston Police Department officers sought a warrant to search Mr. Aguilar's home. The affidavit read:

> Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law. *Aguilar,* 378 U.S. at 109, 84 S.Ct. 1509, 12 L.Ed.2d at 725.

The Court noted that the record did not reflect that any other information had been brought to the magistrate. *Id.* n. 1. Therefore, in *Aguilar* the Supreme Court considered whether this affidavit, alone, was sufficient to establish probable cause. *Id.* As discussed earlier, both *Aguilar,* under the *Aguilar–Spinelli* test, and *Gates,* under the more flexible totality-of-the-circumstances test, found that this type of affidavit was insufficient to establish probable cause.

■ Corroboration of all tips is not necessary to obtain a search warrant, however. *United States v. Blount,* 123 F.3d 831, 836 (5th Cir.1997) (en banc). In *Blount,* the Fifth Circuit held that, "absent specific reasons for police to doubt his or her truthfulness, an ordinary citizen, who provides information to police at a crime scene or during an ongoing investigation, may be presumed credible without subsequent corroboration." *Id.* at 835. In *Blount,* two Houston Police Department officers were searching a neighborhood for suspects on the run. The officers had obtained a warrant to search an alleged drug house. When they entered the house, a suspected dealer, "Ricky" Thomas, escaped.

While searching the neighborhood for the fleeing suspect, the police observed a resident of the neighborhood standing agitated on her front lawn. *Id.* at 833–34. After some hesitation, she informed the police that "Ricky" had attempted to enter her home to hide. She told the police which home she thought he would end up fleeing to. To be brief, the officers went to the home, conducted a protective sweep and identified cocaine in plain view, detained the persons inside (none of whom were "Ricky"), and then sought a search warrant while maintaining custody of the home.

The Fifth Circuit held that, under these circumstances, probable cause existed to obtain a warrant to search the home. *Id.* at 836. One of the reasons that independent corroboration of the neighbor's statement was unnecessary was the fact that her statement "fit into the end of an ongoing investigation, rather than prompting a new one." *Id.* The court also distinguished *Gates* on the grounds that, in *Gates,* the anonymous tip

involved "unsolicited information concern[ing] people unknown to the police," and therefore was in greater need of independent corroboration. *Id.* Under these circumstances, the court held, corroboration of the tips of average citizens is not necessary. *Id.*

Even unsolicited information, though, need not be corroborated in all cases. In *United States v. Breckenridge,* an agent of the Mississippi Bureau of Narcotics learned from a confidential informant that defendant Mr. Breckenridge was dealing drugs from his home. *United States v. Breckenridge,* 782 F.2d 1317, 1318 (1986). The informant provided detailed information regarding his past dealings with the defendant, and then went to identify Mr. Breckenridge's residence with the agent. Based on this information, a search warrant issued. The Fifth Circuit summarily denied the defendant's contention that the agent's affidavit lacked any indicia of probable cause, concluding that "affidavits much less detailed have formed an adequate basis · for establishing probable cause." *Breckenridge,* 782 F.2d at 1321.

The court cited *Christian v. McKaskle* as an example of a less detailed affidavit that established probable cause. *Christian v. McKaskle,* 731 F.2d 1196 (5th Cir.1984). In *McKaskle,* police had stopped Mr. Christian for a traffic violation. When a protective sweep unearthed a matchbox containing a white powder, Mr. Christian fled and the car was impounded. *Id.* The next day an informant came forward, asserting that concealed drugs were in defendant Christian's vehicle. *Id.* Based on this information, an affidavit was filed, and a warrant issued. The Fifth Circuit found probable cause to issue a search warrant based on this information and the fact that the informant had given truthful information on at least two previous occasions. *Id.* at 1200.

Finally, "common sense impels the conclusion that when a confidential informer is shown to be unusually reliable, the magistrate may place added credibility in such information as reveals the precise source of the informer's knowledge." *United States v. Sellers,* 483 F.2d 37, 41 (5th Cir.1973), *cert. denied,* 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212 (1974), *rev'd on other grounds,*

*United States v. McKeever,* 905 F.2d 829 (5th Cir.1990). The informant in *Sellers* was found to be unusually reliable because he was an undercover FBI Agent who had provided reliable information on more than one hundred occasions. *Sellers,* 483 F.2d at 41, 41 n. 2. Even with such unusual reliability, the Fifth Circuit called *Sellers* "both a unique and close" case, and ultimately decided that probable cause existed. *Id.*

*Sellers,* incidentally, was decided under a flexible standard akin to the *Gates* totality of circumstances standard, even though *Gates* had not yet been decided. *Id.* at 41. "It is not the intent of the *Aguilar* and *Spinelli* decisions to make it difficult for a policeman to get a warrant if in fact he has probable cause.... Accordingly, we have evaluated the warrants in this case not under technical requirements but against the benchmark cases that the Supreme Court has indicated we should use." *Id.* Because *Sellers* was decided under a more flexible standard than the *Aguilar–Spinelli* test, the court finds that its holding is still relevant under *Gates* analysis.

In summation, even though the concept of probable cause remains as fluid as ever, the case law seems to show a clear line of demarcation. Above the line, where probable cause will usually be established, are affidavits based on the following: (1) reliable and corroborated tips that begin an investigation, or are acquired at the crime scene or in the course of an investigation (*Gates* ); (2) reliable uncorroborated tips given to police at a crime scene or in the course of an investigation (*Blount, McKaskle* ); and (3) reliable or unusually reliable uncorroborated tips not at a crime scene, involving extensive dealings between the informant and a suspect (*Breckenridge, Sellers* ).

Below the line appear to be: (1) ratifications (*Gates, Aguilar* ); and (2) unreliable, uncorroborated tips or hunches (*Gates, Nathanson v. United States,* 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933)). It is difficult to conceive of less evidence than a ratification or a hunch on which a search warrant might be granted.

## 2. Finding Probable Cause in this Case

██ Gates and Aguilar indicate that no probable cause exists in this case. The facts of this case fit closely with the hypothetical situations discussed in Gates, where the court outlined several types of affidavits that would not be sufficient to establish probable cause. "An officer's statement that 'affiants have received reliable information from a credible person and do believe' that heroin is stored in a home, is likewise inadequate." Gates, 462 U.S. at 239, 103 S.Ct. at 2333, 76 L.Ed.2d at 549. Such a statement alone would not give the magistrate any basis for determining if probable cause exists. Id. The record does not reflect that Sergeant Lowe did anything more than ratify his quite believable informant's assertion that guns and drugs were present in the residence of an unknown person.

The Blount factors also weigh against a finding of probable cause. For one, the tip in this case involved "unsolicited information concern[ing] people unknown to the police." Blount, 123 F.3d at 836. Second, the tip prompted a new investigation instead of fitting into an existing one. Id. Even McKaskle involved information that fit into an investigation of a defendant known to the police. McKaskle, 731 F.2d at 1198. Finally, Sergeant Lowe detected nothing to indicate that the situation required an urgency that would preclude surveillance or some other type of corroboration.

At first glance the facts of Breckenridge appear to be on all fours with what happened in this case. As mentioned earlier, in Breckenridge the agent took the informant's tip, verified the residence of the defendant, and then sought a search warrant, just as Sergeant Lowe had done. However, the Tenth Circuit's assessment of the Breckenridge holding may be useful in seeing the distinctions between that case and the present case. Wrote the court, "The Fifth Circuit concluded that police reliance on an affidavit containing information based on personal dealings between a reliable informant and a suspect was objectively reasonable, when the police also verified information concerning the suspect's residence." United States v. Medlin, 798 F.2d 407, 409 (10th Cir.1986).

In the present case, the police never sought, nor did they obtain from the informant, the names of the residents of the apartment. The call indicated that the informant had been in the apartment in the past few hours. However, it cannot be said that the affidavit contained information based on personal dealings between the informant and the suspect because there was no suspect. Nor does the record reflect that the informant detailed a history of past transactions within apartment 803, or with the residents of apartment 803. In all the previous cases, including Breckenridge and McKaskle, the police at least had the name of the defendant and were able to conduct a background check.

Sergeant Lowe believed that an inquiry as to the names of the residents would jeopardize the search. However, no reason was given why a period of surveillance could not have been conducted, which could then have revealed the identities of the residents, without jeopardizing the investigation. Moreover, no reason was given why time was of such essence to negate surveillance at all.

The total circumstances, therefore, in favor of finding probable cause are: (1) the subjective good faith of the officer; (2) the fact that the magistrate signed the warrant; (3) the greater than ordinary, though not unusual, reliability of the informant; (4) the relative freshness of the information; and (5) some similarity between the present facts and the facts of Breckenridge and McKaskle.

The factors against finding probable cause include: (1) similarity between the present facts and the factual situations expressly disavowed in Gates and Aguilar; (2) the tip involved an unnamed, unknown defendant that commenced a new investigation; (3) the failure of the tip to predict the future actions of third parties, dealing instead only with past events; (4) no information whether the informant had any extensive past dealings with any resident of the apartment; (5) no indications of illegal activity on the officer's walk-by; and (6) no effort to corroborate any of the informant's allegations, nor even to investigate the names or criminal records of the residents of apartment 803.

Given the totality of the circumstances, the court finds that Sergeant Lowe's affidavit is a conclusory ratification of the type disavowed in *Gates,* rather than the type approved in *Blount* and *Breckenridge.* The court notes that the *Breckenridge* and *McKaskle* cases can be distinguished by their facts, while *Aguilar* cannot. Almost none of the factors favoring a probable cause finding diminishes the connection between *Aguilar* and the present factual situation. The subjective good faith of the officer and the magistrate's decision to sign the warrant are both non-issues, even according to *Leon.* "Deference to the magistrate, however, is not boundless ... his action cannot be a 'mere ratification of the bare conclusions of others.'" *Leon,* 468 U.S. at 914–15, 104 S.Ct. at 3415–16, 82 L.Ed.2d at 693 (citing *Gates*); *see also Leon,* 468 U.S. at 915,n. 13, 104 S.Ct. 3405 (noting "good faith on the part of the arresting officer is not enough").

The fact that the informant had a good track record for truthfulness goes only to the officer's conviction that the informant is reliable and credible. It does not change the fact that the affiant's statement is a conclusory ratification lacking any circumstances that corroborate or "fit in" with the informant's tip. The only factor that vitiates the *Aguilar* connection is the relative freshness of the information. However, this factor does not overcome the total circumstances that favor a finding of no probable cause.

The court notes that probable cause does not lend itself to a "neat set of legal rules;" nor is the court attempting to compartmentalize this case into a neat set of rules. *Blount,* 123 F.3d at 836 (citing *Gates,* 462 U.S. at 232, 103 S.Ct. at 2329, 76 L.Ed.2d at 544). Yet the Fifth Circuit's conclusion in *Blount* and a fair reading of *Gates,* that corroboration is not *always* necessary to a determination of probable cause, imply that corroboration is at least *sometimes* necessary to a finding of probable cause. In the present factual situation, the court holds that the totality of the circumstances required the police officers to corroborate the informant's testimony at least by ascertaining the names of the residents of the apartment and their criminal records, if any.

After a full and careful consideration of the total circumstances, the court finds that the affidavit does not establish sufficient probable cause to obtain a search warrant.

### 3. Lacking Any Indicia of Probable Cause

Since the court finds that the affidavit is insufficient to establish probable cause, the question now is whether the warrant is so lacking in probable cause as to render police belief in the warrant unreasonable. The Fifth Circuit has indicated that, for a warrant to be utterly lacking in indicia of probable cause, the underlying affidavit would essentially have to be a "bare bones" affidavit. *United States v. Satterwhite,* 980 F.2d 317, 320 (5th Cir.1992); *see also United States v. Craig,* 861 F.2d 818, 821(5th Cir.1988). "Clearly, a 'bare bones' affidavit is insufficient to establish probable cause." *United States v. Brown,* 941 F.2d 1300, 1303 (5th Cir.), *cert. denied,* 502 U.S. 1008, 112 S.Ct. 648, 116 L.Ed.2d 665 (1991); *Satterwhite,* 980 F.2d at 321. Even though the magistrate is entitled to some deference in his or her determination that probable cause exists, *United States v. Settegast,* 755 F.2d 1117 (5th Cir.1985), the problem with bare bones affidavits is that they "contain wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *Satterwhite,* 980 F.2d at 321 (citing *Gates*).

In *United States v. Brown,* the Fifth Circuit identified two examples of bare bones affidavits, and the two examples were lifted directly from the Supreme Court's decision in *Illinois v. Gates. Compare Gates,* 462 U.S. at 239, 103 S.Ct. at 2332, 76 L.Ed.2d at 548–49, *with Brown,* 941 F.2d at 1303 n. 1; *see also Satterwhite,* 980 F.2d at 321; *United States v. Laury,* 985 F.2d 1293, 1311 n. 23 (5th Cir.1993). One of the two examples identified as a bare bones affidavit was the Houston police officer's affidavit in *Aguilar.*

The Supreme Court and the Fifth Circuit, therefore, have identified the *Aguilar* situation as an example of an affidavit so lacking in indicia of probable cause as to render official belief in the warrant unreasonable. Because the court finds that the

underlying affidavit in the present case is essentially an *Aguilar* type affidavit, the court necessarily holds that the affidavit lacks any indicia of probable cause.

The court finds that the good faith exception to the exclusionary rule should not apply to the present case. An examination of the warrant finds that official belief in its validity was unreasonable, despite the officer's best intentions. The officer's affidavit in this case is inconsistent with at least three U.S. Supreme Court decisions and a host of Fifth Circuit opinions. "The objective standard we adopt ... requires officers to have a reasonable knowledge of what the law prohibits." *Leon,* 468 U.S. at 919 n. 20, 104 S.Ct. at 3405 n. 20, 82 L.Ed.2d. at 696 n. 20. Additionally, while it is not relevant to a determination of probable cause, the court notes that the officers could not have objectively relied on Texas state law, either, to assert that their belief in the sufficiency of the affidavit was reasonable. *See Parish v. State,* 939 S.W.2d 201, 204 (Tex.App.—Austin 1997) (noting that corroboration of a "bare tip" of itself is insufficient, and that the court need also consider "the *amount* and *nature* of the corroboration;" additionally, that an "anonymous tip, without the observance of activity indicating criminal conduct, does not provide probable cause to search the person's home or personal effects solely because that individual has a criminal record") (emphasis in original). As *Leon* acknowledges, application of the exclusionary rule is necessary in this case to ensure that officers have knowledge of what the law requires at a minimum for a finding of probable cause.

In connection with the serving of the warrant, the court acknowledges the officers' bravery and marksmanship in the face of a difficult and dangerous situation. Thankfully, the situation was neutralized before anyone was seriously injured, although the risk of serious injury was great, given the inherent danger of knocking down the door to someone's home. As with the probable cause issue, more investigation might have better gauged the threat to officer safety. At the time of entry, the officers did not know the names of the residents of the apartment, the residents' criminal backgrounds, including any propensity for violence, or the number of people in the apartment. Investigation of these facts, within the control of law enforcement, would have better apprised the officers of the scope of the dangers before them.

## CONCLUSION

The "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *New York v. Harris,* 495 U.S. 14, 17, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990) (internal citations omitted). Of course, with "probable cause, supported by Oath or affirmation," police may enter a person's home. *U.S. Const. Amend. IV.* But probable cause to violate the sanctity of a person's residence simply has to be more than receiving an anonymous tip, verifying a description of the residence, and seeking a warrant two hours later. Because the court finds that probable cause to issue the warrant did not exist and that the *Leon* good faith exception is not applicable, the court holds that the exclusionary rule applies with respect to all evidence obtained in the July 18, 1997, search.

Defendant is being held on other state charges, in criminal cause number Cr–23,687 in the 238th Judicial Court of Midland County, Texas. This order relates only to this case. The court has no information which would indicate whether or not this order has relevance to the state case against Defendant.

Accordingly, Defendant's Motion to Suppress Evidence is GRANTED.